BRONIA, INC., Country–Wide Produce, Inc., H & M Fleischer, Inc., Kleinman & Hochberg, Inc., Krisp–Pak Sales Corp., Megna Fruits & Produce, Inc., Mister Sprout, Inc., Schnell & Co., Inc., Sun Valley Produce, Inc., Tray–Wrap, Inc., Ven–Co Produce, Inc., and Wishnatzki & Nathel, Inc., Plaintiffs,

v.

**Seo Young HO, Defendant.**

No. 91 Civ. 1493 (WCC).

United States District Court,
S.D. New York.

Jan. 20, 1995.

---

**8.** *Burford v. Sun Oil Company*, 319 U.S. 315, 63    S.Ct. 1098, 87 L.Ed. 1424 (1943).

856

Law Offices of Leonard Kreinces, Great Neck, NY (Leonard Kreinces, of counsel), for plaintiffs.

Sullivan, Donovan, Bond & Bonner, New York City (Gary E. Ireland, Robert J.A. Zito, of counsel), for defendant.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This case arises under the Perishable Agricultural Commodities Act ("PACA"), which creates statutory trusts in favor of unpaid sellers of perishable goods. Plaintiffs are unpaid sellers seeking trust benefits totalling $191,180.56 from the defendant Seo Young Ho in his capacity as the sole shareholder, officer, and director of Tradefield Produce Corporation ("Tradefield"). Before the court is plaintiffs' motion for summary judgment on their claims of liability against Seo. For

the reasons set forth below, we grant the motion with regard to liability but reserve the issue of damages for trial.

## I.

Prior to filing a petition for bankruptcy in 1991, the defendant's company, Tradefield, operated as a produce wholesaler out of Hunts Point Market in the New York City area. Between late 1989 and 1990, Tradefield purchased a total of $347,000 worth of commodities on credit in a series of transactions with the plaintiffs which it then resold to local Korean markets in Manhattan, Brooklyn and Queens. Despite numerous demands from the plaintiffs, however, Tradefield did not pay for its purchases and in January, 1991 filed a Chapter 7 petition for bankruptcy. Plaintiffs then filed this suit against Seo personally, claiming that he violated his obligations under PACA to hold the commodities and their proceeds in trust for the plaintiffs.

### A. PACA and the Issues Arising Thereunder

In 1984, Congress amended PACA by creating a statutory trust that must be maintained by each purchaser of perishable goods in favor of unpaid suppliers and sellers of such commodities. The statute provides in pertinent part:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has

been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

■ While the trust is automatically created under the statute, the unpaid seller will lose the trust benefits unless he "gives written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker *and* has filed such notice with the Secretary within thirty calendar days after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary." 7 U.S.C. § 499e(c)(3) (emphasis added). The regulations issued by the Secretary of Agriculture require that payment be made within 10 days of receipt of the goods. 7 C.F.R. 46.2(aa)(5). Thus the unpaid seller must give notice to both the purchaser and the Secretary within 40 days of the purchaser's receipt of the goods.

Pursuant to their summary judgment motion, plaintiffs' attorney submitted an affidavit stating that plaintiffs "have timely filed notices with the Secretary of Agriculture." The affidavit did not mention any notice given to Tradefield or Seo, however. In his response, Seo submitted an affidavit stating that Tradefield received notice of plaintiffs' intent to preserve the trust benefits only after Tradefield filed for bankruptcy on February 6, 1991. As the goods at issue were received in late 1989 and early 1990, notice in February 1991 would not comply with the forty-day requirement under the statute. In May, 1994, we held a hearing to decide whether Tradefield, and hence Seo, had received timely notice that plaintiffs intended to preserve their trust rights under PACA.[1] This Opinion incorporates the Court's findings of fact based on the evidence adduced at that hearing, pursuant to Rule 52, Fed.R.Civ. Pro.

### B. The Evidentiary Hearing

Kleiman & Hochberg ("K & H") and Wishnatzki & Nathel ("W & N") were the only plaintiffs to participate in the hearing and to

---

1. Plaintiffs submit the United States Department of Agriculture's list of qualified PACA Tradefield creditors (the "PACA List"), indicating that plaintiffs gave proper notice to the USDA for $191,180.56 of the outstanding $347,000 balance allegedly owed by Tradefield, as proof of the amount subject to the PACA trust. Defendant does not dispute the USDA findings.

submit evidence on the notice issue. Since plaintiffs bore the burden of proof, at the hearing we granted defendant's oral motion to dismiss the non-participating plaintiffs' claims. With regard to K & H and W & N, however, the issues are more complex.

W & N claims that Seo is personally liable for $83,000[2] worth of produce purchases made by Tradefield in late 1989 through April 1990 and that these monies are subject to the PACA trust provisions. Ira Nathel, an accounts receivable supervisor at W & N, testified that on December 12, 1989, W & N sent a letter by certified mail (return receipt requested) to the United States Department of Agriculture ("USDA") and Tradefield informing them of W & N's intent to invoke its trust rights. On December 20, 1989, W & N sent the same letter by regular mail to Tradefield. This filing covered invoices from October 23, 1989 through December 12, 1989. W & N received the return receipt from the USDA mailing, indicating that the department had accepted the letter, but the Tradefield certified letter was returned with the acceptance receipt unsigned. W & N's letter sent by regular mail was not returned.

At the hearing W & N introduced receipts indicating that both the certified and regular mailings occurred on the above dates. Although these receipts did not indicate the contents of the USDA and Tradefield mailings, W & N provided certified copies of the USDA filings corresponding to the December 12 letter, which substantiate its claim that it did provide proper notice to the USDA. As to Tradefield however, only Nathel's testimony indicates that W & N supplied the requisite notice. Although Nathel was not the person responsible for actually mailing the letters, he testified that he directed the mailings to occur and another person in the office carried them out in accordance with standard office procedures.

Next, Nathel testified that on March 8, 1990 W & N sent to the USDA by certified mail and to Tradefield by both regular and certified mail notice of its intent to preserve the PACA trust as to invoices from January 23, 1990 through March 6, 1990. W & N introduced receipts covering the Tradefield regular and certified mailings, and a return receipt indicating that on March 9, 1990 Seo accepted delivery of the certified letter. Again, nothing on these receipts indicates the contents of the mailings. Similarly, because he did not perform the mailings himself, Nathel has no personal knowledge that these mailings actually occurred or contained the proper notice.

Finally, Nathel testified that after several of Tradefield's checks bounced, on April 4, 1990 W & N again sent a notice to the USDA by mail and to Tradefield by both certified and regular mail covering invoices from January 29, 1990 through February 5, 1990. Like the December certified mailing to Tradefield, the certified letter to it was returned undelivered. Interestingly, although W & N's and Tradefield's offices were located in the same building, W & N never attempted to hand deliver written notice to Tradefield, even after the December certified letter was returned.

K & H claims that Seo is liable for $50,000[3] in unpaid invoices to Tradefield that are similarly subject to the PACA trust provisions. Helene Traeger, a K & H office manager, testified that K & H provided written notice of its intent to preserve its trust rights to the USDA and Tradefield by Federal Express on March 14, 1990 and March 15, 1990[4] covering invoices from February 2, 1990 through February 8, 1990 and February 9, 1990 through February 23, 1990, respectively. K & H introduced the Federal Express receipts corresponding to the Trade-

---

**2.** This figure comes from the PACA List. Since plaintiffs argue they simultaneously provided notice to the defendant and the USDA, and the defendant does not dispute the USDA's determination of which filings met the forty-day notice deadlines, plaintiffs contend this figure is a binding determination of Seo's liability. While the defendant does not challenge the USDA's timeliness determinations, he does dispute the amount originally purchased from the plaintiffs.

**3.** This figure also comes from the PACA List. *See supra* note 2.

**4.** The Federal Express receipts indicate K & H mailed the packages on March 13 and 14 (not 14 and 15). Furthermore, the USDA certified it received the packages on the 14th and 15th. The discrepancy in these dates is not important for this motion, however.

field mailings into evidence, but like the W & N receipts, nothing on them indicates what the mailings contained.[5] Although these packages were not returned,[6] K & H offered no direct evidence that the packages were received. Unlike Nathel, however, Traeger actually performed the mailings and testified that the receipts correspond to the notice mailings she sent out.

Again at the hearing, Seo denied that he received any of the mailings. He also testified that he was locked out of his business in late March or early April, 1990, although he is unsure exactly when this occurred. This would possibly explain why W & N's April certified mailing was returned as undeliverable.

## II.

■ Under section 499e(c)(3) of PACA, the mere mailing of a notice is not sufficient to preserve a seller's trust rights. Instead, that section requires that written notice be delivered to the dealer or merchant. *See In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 338 (Bankr.D.Mass.1990) (notice must be given by the seller and received by the debtor); *In re Marvin Properties, Inc.*, 854 F.2d 1183, 1186 (9th Cir.1988) (notice must be given directly to buyer). Based solely on the statutory language, defendant's contention that because he never received notice plaintiffs cannot enforce the trust against him is particularly compelling.

■ Under general New York law, however, the Second Circuit has indicated that mailing a letter creates a presumption that the addressee received it. *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir.1985). To invoke the presumption, a party must first produce evidence of mailing, either by offering the testimony of the person who actually mailed the letter or through indirect evidence such as proof that the mail was sent through office procedures followed in the regular course of business. *Capital*

*Data Corp. v. Capital National Bank*, 778 F.Supp. 669, 675 (S.D.N.Y.1991). Once established, denial of receipt does not defeat the presumption absent evidence that the regular office practice was not followed or was so carelessly executed that the presumption that the notice was mailed becomes unreasonable. *Id.; Meckel*, 758 F.2d at 817. *But see Phillips v. Riverside*, 796 F.Supp. 403, 408 (E.D.Ark.1992) (allowing denial of receipt to defeat the presumption under Arkansas law).

■ Against this backdrop, the real factual issue to be resolved by the hearing was whether the notices were in fact mailed to Tradefield. If they were, even by regular mail, Tradefield is presumed to have received the mailings and thus to have had notice of their contents.

### A. Kleiman & Hochberg

■ K & H sufficiently established that they mailed the requisite notices to Tradefield on March 13 and 14. Traeger, the person responsible for actually mailing these letters, testified that she properly sent them to Tradefield and her testimony is corroborated by the Federal Express receipts and the fact that the USDA received the same notice mailings around the same time. Testimony of the responsible individual indicating that the mailing in fact occurred is sufficient to invoke the presumption of receipt. *Capital Data*, 778 F.Supp. at 675. Since the Tradefield mailings were not returned to K & H, and Seo did not establish that the mailing procedure was careless, he has not rebutted the presumption.

### B. Wishnatzki & Nathel

■ Although W & N's circumstances present a closer case, Nathel's testimony sufficiently demonstrates that W & N also mailed the required notices to Tradefield. While Nathel did not actually perform the mailings, he did testify that standard office

---

**5.** Although Ms. Traeger testified that the receipts were kept in files attached to the documents sent in the letters, they were not introduced into evidence so attached.

**6.** Traeger testified that normally after three unsuccessful attempts to deliver the package, Federal Express returns the package to the sender. K & H offered no evidence regarding Federal Express official policies to substantiate this claim.

procedure dictated simultaneously sending notices to the USDA and a debtor-merchant.[7] He also testified that he directed that the notice be sent to Tradefield on each of these occasions. His testimony is bolstered by the USDA records and the mailing receipts which indicate that W & N performed the alleged mailings.

■ This case is very similar to *In re East Coast Brokers and Packers, Inc.*, 961 F.2d 1543, 1545–46 (11th Cir.1992), in which the court found sufficient proof of mailing despite the absence of first hand knowledge. In *East Coast Brokers*, although noting that unsupported conclusory statements regarding how mail is handled in the normal course of business fall short of the evidence required to demonstrate notice under PACA, the court held that the USDA's receipt of certified copies of the PACA notice and a supervisor's specific testimony regarding office procedures sufficiently established that the mailing occurred. In the instant case, as in *East Coast Brokers*, W & N introduced certified copies of the PACA notices filed with the USDA and testified to specific office procedures for mailing the same notices to Tradefield. Moreover, W & N provided receipts for each of these alleged mailings. Although the receipts on their face do not indicate the contents of the mailings, since the certified USDA filings indicate that the USDA mailings included the proper notice and the receipts indicate that the Tradefield letters were mailed contemporaneously with the USDA mailings, sufficient evidence exists to find that the Tradefield mailings contained duplicates of the notices received by the USDA. We find that W & N has established that the mailings occurred.

■ However, this leaves the question of whether Seo and Tradefield actually received the notices. We conclude that they did. Although Tradefield never accepted delivery of the certified mailings in December and April, all three notice mailings (December, March, and April) were also sent through the regular

mail. Given the presumption articulated in *Meckel*, Tradefield must be charged with notice from all three mailings.

The only equitable considerations that weigh in defendant's favor are the fact that neither K & H nor W & N provided personal service to Tradefield, even though all three companies were located in the same building, and that, at least in late March and early April, Seo was locked out of his business (and therefore arguably unable to receive his mail). While it is true that K & H and W & N did not do all they reasonably could have to assure that Tradefield received notice, the law does not require these extra steps. In addition, the defendant offers no reason why, if he was indeed locked out of his business when the April mailings occurred, he did not arrange to receive his mail elsewhere. Be that as it may, the evidence clearly establishes that the mailings occurred. Seo's testimony that he never received notice fails to rebut the presumption that the mailings were in fact delivered to and received by Tradefield.

### III.

Defendant next argues that even if he received the required notice, he cannot be liable for breaching a fiduciary duty to the plaintiffs absent evidence that he personally participated in violating the trust requirements. Seo asserts that the mere fact that plaintiffs remain unpaid is an insufficient basis to bring charges against him for breaching a fiduciary duty. We do not agree.

Under USDA regulations, the trust corpus consists of all perishable agricultural commodities received in the transactions, products derived from those commodities, and proceeds from their sale. 7 C.F.R. § 46.46(c). The regulations further require Tradefield, and hence Seo, to maintain the trust assets "in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(e). Any

---

7. Seo disputes this finding, but offers no evidence to refute Nathel's testimony that W & N regularly supplies PACA notices to its overdue customers. Moreover, the fact that the USDA received the requisite notice filings that correspond to each of the alleged Tradefield mailings supplies the "indirect evidence" to which *Capital Data* alludes. *Capital Data Corp.*, 778 F.Supp. at 675.

act inconsistent with this duty, including dissipation of the trust assets, is actionable. *Id.*

Defendant argues that since Tradefield did not "dissipate" the trust assets, but instead attempted to collect the proceeds from the resale of the commodities, he should not be liable. Defendant apparently misunderstands the duties of a trustee. The fact that Tradefield attempted but failed to collect this money does not satisfy its duty to the plaintiffs. The trust corpus extends to both the produce and the proceeds from its sale. Relinquishing control of the commodities without securing payment is "dissipation of the trust assets." Similarly, failing to turn over the trust assets when payment is due to the produce sellers breaches Tradefield's fiduciary duty to make the trust assets "freely available" to the plaintiffs.

Moreover, because of his status in Tradefield, Seo is personally liable for any breach of trust by Tradefield. While the Second Circuit has yet to address this issue, several courts in this and other districts have imposed personal liability in analogous situations. Seo was the sole shareholder, director, and president of Tradefield Corporation. He was the "primary actor responsible for [Tradefield's] failure to live up to its fiduciary responsibilities under PACA," *In re Nix*, No. 91–4040–COL, 1992 WL 119143 at *5 (M.D.Ga. April 10, 1992), and is thus personally responsible for Tradefield's breach of the trust. *Id.; Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F.Supp. 346, 349 (S.D.N.Y.1993); *A & J Produce Corp. v. CIT Group/Factoring Inc.*, 829 F.Supp. 651, 655–56 (S.D.N.Y.1993). As explained in *Morris Okun:*

> PACA establishes a statutory trust for the benefit of sellers and suppliers. This trust arises from the moment perishable goods are delivered by the seller. An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. This legal framework is to be distinguished from the piercing the veil

doctrine, where the corporate form is disregarded because the individual has either committed a fraud, or because the corporation is a "shell" being used by the individual shareholders to advance their own purely personal rather than corporate ends. 814 F.Supp. at 348.

Defendant argues that he should not be liable because, unlike *Nix*, where the corporate controlling person made no effort to identify trust monies or preserve proceeds for the commodities sellers, Seo did not personally misappropriate the trust assets. Defendant does not deny, however, that as the controlling person of Tradefield, he owes a fiduciary duty to the plaintiffs. Therefore, Tradefield's failure to preserve the trust assets is also his failure. Whether or not Tradefield has surrendered the trust assets by filing a petition for bankruptcy and placing any trust assets that may still exist in control of the bankruptcy trustee, Seo has breached his obligation to keep those assets freely available for satisfying Tradefield's obligations to plaintiffs and is personally liable to plaintiffs therefor.

IV.

Finally, while we find the defendant personally liable to W & N and K & H, Seo's challenges to the amount of goods purchased from plaintiffs preclude the entry of judgment as to the extent of his liability. Although the PACA List may be conclusive as to which PACA filings preserved plaintiffs' trust rights with regard to which commodities sales, the list itself does not establish that the alleged transactions occurred.[8] Therefore, because genuine issues of material fact persist, we cannot grant summary judgment regarding the extent of Seo's liability to plaintiffs at this time. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Conclusion

In sum, we find defendant Seo personally liable for the PACA amounts owed by Tradefield to plaintiffs Kleiman & Hochberg and Wishnatzki & Nathel for their respective

---

8. We have no occasion at this time to decide whether the PACA List is a conclusive determination as to the extent of the PACA trust imposed upon Tradefield and Seo and plaintiffs' contention that it should be admitted for that purpose under Rule 803(8)(C), Fed.R.Evid.

sales of perishable commodities to Trade-field. In addition, because only K & H and W & N appeared at the evidentiary hearing, the claims made by all other plaintiffs are dismissed. Finally, although the defendant does not contest the accuracy of the USDA's list of qualified PACA creditors, he does question the amount of commodities Trade-field purchased from plaintiffs. Therefore, to the extent plaintiffs seek summary judgment as to the damages to be imposed against defendant, their motion is denied.

SO ORDERED.