**MOVSOVITZ & SONS OF FLORIDA, INC., Plaintiff**

v.

**AXEL GONZALEZ, INC., et al., Defendants.**

No. 02–1634(SEC).

United States District Court, D. Puerto Rico.

April 20, 2005.

Orlando Fernandez, Garcia & Fernandez, San Juan, PR, Louis W. Diess, III, McCarron & Diess, Washington, DC, for Plaintiff.

Axel Gonzalez, Arecibo, PR, pro se, Alejandro Oliveras–Rivera, Daniel Morrison, Daniel Morrison Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Plaintiff's motion for summary judgment (Docket # 22). Defendants filed an opposition (Docket # 25) and Plaintiff replied (Docket # 34). After carefully examining the parties' arguments, the case record and the applicable law, Plaintiff's motion will be **GRANTED.**

**Factual Background**

Plaintiff in the instant case is a Florida corporation engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities (herein "produce") and is a dealer subject to and licensed under the provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) (hereinafter "PACA") (Docket # 1 at ¶ 3).[1] Defendants are a

---

1. On February 27, 2003 West Coast Produce, Inc. ("West Coast") filed a motion to intervene in the instant matter (Docket # 26). West Coast simultaneously filed their Complaint in Intervention (Docket # 26). West Coast claimed that they had also delivered produce to Defendants and that Defendants

Puerto Rico corporation, Axel González, Inc. d/b/a North Produce ("North Produce"), and its officers, Axel H. González and Sasha E. Aponte, who allegedly ordered and accepted wholesale amounts of produce worth $116,217.50 and failed to pay Plaintiff for said produce (Docket # 1 at ¶¶ 4–7). Plaintiff asserts that "at the time of the receipt of the produce, plaintiff became a beneficiary in a statutory trust designed to assure payment to produce suppliers" and that as such, it has an interest in said PACA trust in the amount of $116,217.50 and will remain a beneficiary until full payment is made (Docket # 1 at ¶ 8). However, Co-defendant North Produce ceased all operations on April of 2002 and Defendants are unable to pay Plaintiff (Docket # 1 at ¶ 10). Plaintiff then contends that Defendants' failure to pay and the closing of their business indicates that Defendants have failed to maintain sufficient assets in the statutory trust to cover their debt and thus, have dissipated the trust assets in violation of Section 5(c) of the PACA and PACA regulations (Docket # 1 at ¶ 11). Therefore, Plaintiff has filed suit for failure to pay trust funds, failure to pay for goods sold and unlawful dissipation of trust assets against the corporate officials.

**Standard of Review**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Prop.,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties."

had failed to pay them for $120,588.80 worth of produce (Docket # 26 at Complaint ¶ 7). Therefore, West Coast posited that it is also the beneficiary of Defendants' PACA statutory trust until full payment is made on the produce delivered (Docket # 26 at Complaint ¶ 15). As such, they sought intervention in this matter contending that Plaintiff is not the sole beneficiary of the PACA statutory trust in question. Intervention was granted on June 24, 2003 (Docket # 36). However, to date, Defendants have failed to answer West Coast's complaint. Thus, the Court hereby **ORDERS** Defendants to **SHOW CAUSE by May 20, 2005** why default on West Coast's claims should not be entered against them.

Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greensburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medi-*

*na Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the non-moving party controverts 'this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

Although Defendants have filed an opposition to Plaintiffs' motion for summary judgment, they have failed to address Plaintiff's entire statement of uncontested facts. Defendants have simply filed a two-page motion disputing only two issues: (1) that Co-defendant Aponte has never been an officer of Co-defendant North Produce, and (2) that the attorney's fees demanded by Plaintiff are unreasonable and excessive and the clause in which these attorney's fees were agreed upon in case of delinquency was not freely negotiated by Defendants (i.e. contract of adhesion) (Docket # 25 at ¶¶ 2–3). Thus, with the exception of these two issues, Plaintiff's statement of uncontested facts is deemed admitted.

Accordingly, the following material facts are undisputed:

1. Plaintiff, Movsovitz & Sons of Florida, Inc. ("Movsovitz"), is a Florida corporation engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities, in interstate commerce. It was at all time pertinent herein a produce dealer subject to and licensed under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. § 499a *et seq.*

2. Plaintiff Movsovitz sold and delivered to defendants in interstate commerce, various wholesale lots of produce worth $116,217.50 of which $116,217.50 remains unpaid.

3. Defendants accepted said produce.

4. Plaintiff Movsovitz preserved its interests under the trust provisions of the PACA by sending invoices to defendants which contained the language required by 7 U.S.C. § 499e(c)(4) and is presently owed $116,217.50.

5. Defendant Axel Gonzalez, Inc. d/b/a North Produce ("North Produce"), is a Puerto Rican corporation that was engaged in the business of buying and selling wholesale quantities of produce in interstate commerce and was at all times pertinent herein, a dealer subject to and licensed under the PACA as a dealer.

6. Defendant Axel H. Gonzalez was an officer and director of defendants North Produce, responsible for its day-to-day office operations, and in a position to control the PACA trust assets belonging to plaintiffs.

7. On November 2, 1999, defendant North Produce executed plaintiff's Account Information in which it agreed to be responsible for attorney's fees and costs in the event the account became delinquent.

(Docket # 22).

**Applicable Law and Analysis**

■ The purpose of PACA was "primarily to eliminate unfair practices in the marketing of perishable agricultural commodities in interstate commerce in the case of a declining market by making it difficult for unscrupulous persons to take advantage of shippers by wrongful rejection of the goods upon arrival at a point where it is expensive and impractical for the shipper to enforce his legal rights." *Joseph Martinelli & Co. v. Simon Seigel Co.*, 176 F.2d 98, 100 (1st Cir.1949). *See* 7 U.S.C. § 499e(c)(1). Among other things, PACA requires "licensing of all entities qualifying as commission merchants, dealers, and brokers (buyers); bars a variety of unfair trade practices by buyers; and provides various remedies when violations occur." *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 36 (2nd Cir.2004) (internal citations omitted). "PACA requires buyers to make 'full payment promptly' for all commodities received from produce sellers." *Id.* (*citing* 7 U.S.C. § 499b(4)). Accordingly, PACA provides for the creation of a statutory trust whenever produce is delivered and unpaid by the buyer.

■ The supplier of produce becomes a beneficiary of said statutory trust which is a "non-segregated floating trust" that applies to all of the buyer's produce in inventory and all proceeds from the sale of produce until full payment is made. Essentially, the trust comprises: (1) produce purchased from suppliers, (2) all inventories of foods or other products derived from the produce, and (3) receivables or proceeds from the sale of said produce. *In re Magic Rests., Inc.*, 205 F.3d 108, 111 (3rd Cir.2000); *Hiller Cranberry Prods.,*

*Inc. v. Koplovsky,* 165 F.3d 1, 4–5 (1st Cir.1999). To this end, the PACA specifically provides that:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.

7 U.S.C. at § 499e(c)(2). Thus, when a produce supplier, such as Plaintiff, has delivered produce which the buyer has accepted and failed to pay for, the supplier may have a cause of action for failure to pay trust funds, failure to pay for goods sold, and unlawful dissipation of trust assets against the corporate officials. *See Am. Banana Co.,* 362 F.3d at 38.

However, an unpaid supplier could lose its cause of action under the PACA if it does not provide written notice of its intent to preserve the benefits of the trust within thirty (30) calendar days after the buyer has failed to make the appropriate payment. *Id.* at § 499(c)(3); *Hiller Cranberry Prods.,* 165 F.3d at 5. Said notice can be made by sending the buyers the usual bills or invoice statements. 7 U.S.C. at § 499(c)(4).

### 1. Co-defendant North Produce

In the case at bar, it is undisputed that Plaintiff delivered to Defendants produce amounting to $116,217.50, and that Defendants accepted and failed to pay for it

(Docket # 22 SUF Nos. 2–3). Furthermore, it is uncontested that Co-defendant North Produce is a dealer subject to the PACA provisions (Docket # 22 SUF No. 5). Thus, there is no question that upon delivery and acceptance of the produce, a statutory trust was created pursuant to the PACA trust provisions and that to date, Plaintiff remains a beneficiary of said trust (Docket # 22 SUF No. 4). There being no contradictory evidence, we cannot but conclude that Co-defendant North Produce is liable to Plaintiff for failure to pay trust funds (Docket # 1—Count 1 to the Complaint) and failure to pay for goods sold (Docket # 1—Count 2 to the Complaint). Thus, Plaintiff's motion for summary judgment as to Co-defendant North Produce is hereby **GRANTED.**[2]

### 2. Co-defendant Axel H. González

 There is no dispute as to the fact that, at the time of the delivery of the produce, Co-defendant González was an officer and director of Co-defendant North Produce (Docket # 22 SUF No. 6). As such, Co-defendant González was responsible for its day-to-day office operations and in a position to control the PACA trust assets belonging to Plaintiff (Docket # 22 SUF No. 6). The law is clear that a "PACA beneficiary **has priority over any secured creditor** on the purchaser's commodity-related assets to the extent of the amount of his claim." *Hiller Cranberry Prods.,* 165 F.3d at 8–9 (our emphasis). Thus, a trustee (e.g. corporate official or director) has a fiduciary duty to the beneficiaries of the PACA trust and is required to preserve the assets of said trust so that its beneficiaries may recover the money owed to them. As such, "an individual who is in the position to control the PACA trust assets and who does not preserve

---

**2.** As stated above, the unlawful dissipation of trust assets counts (Counts 3 & 4) are only

alleged as to the officers of Co-defendant North Produce. *See* Docket # 1 at ¶¶ 16–25.

them for the beneficiar[y] has breached a fiduciary duty, and is personally liable" [ ]. *Id.*, 165 F.3d at 8–9 (stating that a trustee "who uses trust assets for any purpose other than repayment of the supplier is liable to the trust beneficiaries. This includes use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment for rent, payroll, or utilities."); *see also Golman–Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 350–51 (5th Cir.2000)(*citing Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir.1997)). Furthermore, a corporate official may be liable for dissipation of trust assets when there has been a diversion of trust assets or when the official has impaired the unpaid suppliers' ability to recover payment for the money owed. *Am. Banana Co.* 362 F.3d at 41 (*citing* 7 C.F.R. § 46.46(a)(2)). *See also* 7 C.F.R. § 46.46(d)(1) ("A produce buyer must simply maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." (internal quotations omitted)).

■ Since there is no dispute that Co-defendant González was responsible for Co-defendant North Produce's day-to-day office operations and in a position to control the PACA trust assets, we find that Co-defendant González had a fiduciary duty to preserve said assets for Plaintiff. Furthermore, we find that Co-defendant González breached his fiduciary duty since Plaintiff was never paid, notwithstanding the fact that the operations of the corporation ceased in the year 2002. Accordingly, there being no evidence to the contrary, we find that Co-defendant González is liable to Plaintiff for unlawful dissipation of trust assets (Docket # 1—Count 3 to the Complaint) and Plaintiff's motion for summary judgment against said Co-defendant is hereby **GRANTED.**

### 3. Co-defendant Sasha E. Aponte

In their opposition to Plaintiff's motion for summary judgment, Defendants argue that Co-defendant Aponte should not be held personally liable for dissipation of trust assets since she "has never been an officer of the Defendant Corporation Axel Gonzalez, Inc., nor has she ever been a director of said corporation, [ ] nor has she had control over PACA trust assets." (Docket # 25 at ¶ 2). Defendants offer no proof in support of said averment. They solely make reference to their answer to the complaint and allege that Plaintiff's allegation to this end was denied. After reviewing Defendants' answer to the complaint, we find that Defendants did deny that Co-defendant Aponte was in control of Co-defendant North Produce's day to day operations (Docket # 14 at ¶ 3). However, Defendants clearly accepted that Co-defendant Aponte was in fact an officer of Co-defendant North Produce and that, consequently, she was in a position to exert control over PACA trust assets (Docket # 14 at ¶ 3).

■ Liability for dissipation of trust assets may be imposed as a result of a corporate official's actions or inactions (omissions). Furthermore, even when someone is a passive shareholder he may still be held responsible for dissipation of PACA trust assets. *Id.* (holding that a shareholder may not "escape liability based on a real or claimed failure to exercise his right and obligation to control the company.... [R]efusal or failure to exercise any appreciable oversight of the corporation's management [is] a breach of his fiduciary duty to preserve the trust assets."); *Hiller Cranberry Products*, 165 F.3d at 9; *Sunkist Growers, Inc.*, 104 F.3d at 283 (holding that individual shareholders, officers or directors who are in a position to control PACA trust assets and who breach their fiduciary duty to pre-

serve said assets may be held personally liable). Thus, Defendants' bald assertions without any evidence on the record are insufficient to create a triable issue of fact as to whether Co-defendant Aponte was an officer of Co-defendant North Produce with a fiduciary duty to secure PACA trust assets and that she breached her fiduciary duty to Plaintiff by not preserving said assets. *See Lawton,* 101 F.3d at 223 (the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions" and "must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue.") Thus, the same logic applied to Co-defendant González applies to Co-defendant Aponte: she was an officer in control of PACA trust assets and failed to pay Plaintiff for the delivered produce. Accordingly, we find that Co-defendant Aponte is liable to Plaintiff for unlawful dissipation of trust assets (Docket # 1— Count 3 to the Complaint). Therefore, Plaintiff's motion for summary judgment as to Co-defendant Aponte is hereby **GRANTED.**

### 4. Attorney's Fees

■ Lastly, Defendants aver that Plaintiff's request for 33 1/3% in attorney's fees is unreasonable and excessive and arises from a contract of adhesion not freely negotiated by them (Docket # 25 at ¶ 3). Again, Defendants have failed to proffer any evidence in support of their contention. On the other hand, Plaintiff has provided the Court with an Account Information Form in which Co-defendant North Produce agreed to pay attorney's fees and costs in the event the account became delinquent (Docket # 1, Ex. 1). Said agreement specifically states the following: "[t]he undersigned purchaser agrees to pay, in the event the account becomes delinquent and is turned over to an attorney for collection, attorney's fees equal to 33 1/3% of the balance due plus all attend-

ant collections costs" (Docket # 1, Ex. 1 at p. 2). There followed Co-defendant González's signature as President of Co-defendant North Produce.

■ There can be no question that Defendants were on notice, before accepting produce from Plaintiff, that if they failed to pay for said produce that they would be held accountable for attorney's fees and costs of collection. Attorney's fees included on invoices gives a PACA trust beneficiary a contractual right to such an award. *See e.g., Country Best, M & M v. Christopher Ranch, LLC,* 361 F.3d 629, 632 (11th Cir.2004) (citations omitted) (holding that the PACA provision which allows for "full payment of the sums owing in connection with [commodities] transactions .... unambiguously encompasses not only the price of commodities but also additional related expenses" such as attorney fees and pre-judgment interests); *Middle Mountain Land & Produce Inc. v. Sound Commodities, Inc.,* 307 F.3d 1220, 1223–24 (9th Cir.2002) (holding that a supplier of produce may include a contractual provisions for attorney's fees and interests to account for losses that arise from delay in payment under a contractual credit agreement).

■ The only remaining question in this case is whether the alleged "contract of adhesion" is valid and enforceable between the parties. The First Circuit has held that a contract of adhesion is enforceable unless it is found to be "unconscionable or unfair." *Bull HN Info. Sys., Inc. v. Hutson,* 229 F.3d 321, 331 (1st Cir.2000). Thus, a contract of adhesion is not *per se* invalid, proof is required to invalidate its provisions. *Nieves v. Intercontinental Life Ins. Co. of P.R.,* 964 F.2d 60, 63 (1st Cir.1992)(stating that under Puerto Rico law "if the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the par-

ties"). In the case at bar, Defendants have failed to provide any evidence indicating that the Account Information Form was unconscionable, unfair or ambiguous to a fault. Instead, we find that the attorney's fees and costs provision of the Account Information Form is abundantly clear and that, without any supporting evidence, Defendants cannot seriously argue that Co-defendant González's execution of said agreement was involuntary. Thus, we hold Defendants liable for attorney's fees and costs pursuant to the Account Information Form signed by Co-defendant North Produce's President. Accordingly, Plaintiff's request for summary disposition on this respect is hereby **GRANTED** as well.

## Conclusion

For all the reasons discussed above, Plaintiff's motion for summary judgment is **GRANTED** in its entirety. Accordingly, it is hereby **ADJUDGED** that Defendants owe Plaintiff the amount of $116,217.50 plus costs, post-judgment interests and attorney's fees. Partial Judgment shall be entered accordingly.

**SO ORDERED.**