Coosemans v. Gargiulo

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2006

(Argued November 30, 2006                    Decided May 4, 2007)

Docket No. 05-6962-cv

------------------------------------------------------------------

COOSEMANS SPECIALTIES, INC.,

Plaintiff-Appellee,

COOSEMANS SPECIALTIES, INC., KATZMAN BERRY CORP., KATZMAN
PRODUCE, INC., ROBERT MASHA SALES, INC. and TOP BANANA, L.L.C.,

Plaintiffs-Counter-Claimants-Appellees,

—v.—

JACK GARGIULO, JERRY BADER, MARKET SERVICE, INC., d/b/a
ACCOUNTS RECEIVABLE MANAGEMENT SOLUTIONS, also d/b/a ARMS,
TOP BANANA LLC, STATE OF NEW YORK and GRACE GARGIULO,

Defendants,

ALAN GARGIULO,

Defendant-Counter-Claimant,

ALAN J. GARGIULO, JR.,

Defendant-Intervenor-Defendant-Counter-Claimant,

PHILADELPHIA PRODUCE CREDIT BUREAU LLC,

Defendant-Intervenor-Defendant-Intervenor-Plaintiff-
Counter-Claimant-Appellee,

BALDOR SPECIALTY FOODS, "R" BEST PRODUCE, INC. and PUTNAM
PRODUCE INC.,

Defendants-Intervenors-Plaintiffs-Appellees,

SUPREME CUTS, EAST WEST FRESH FARMS, LLC, AFL FRESH & FROZEN, INC., B.T. PRODUCE CO., INC., D'ARRIGO BROS. CO. OF NEW YORK, INC., E. ARMATA INC., FIERMAN PRODUCE EXCHANGE INC., FRUITCO CORP., HUNTS POINT TROPICAL, INC., J&J PRODUCE CO., KLEIMAN & HOCHBERG, INC., MIKE SIEGEL INC., MORRIS OKUN, INC., NATHEL & NATHEL, INC., PAUL STEINBERG ASSOCIATES, INC., SQUARE PRODUCE CO., INC.,

Defendants-Intervenors-Plaintiffs-Counter-Claimants,

M. TROMBETTA & SONS, INC.,

Defendant-Intervenor-Plaintiff-Counter-Claimant,

ALAN J. GARGIULO, SR., a/k/a Jack Gargiulo, and DOM'S WHOLESALE & RETAIL CENTER, INC., a/t/a Dom's Wholesale Market,

Defendants-Intervenors-Defendants-Counter-Claimants-Appellants,

NARA BANK, N.A.,

Intervenor-Plaintiff,

PLATINUM FUNDING CORP.,

Intervenor-Plaintiff-Counter-Defendant.
------------------------------------------------------------------

Before: MESKILL, CARDAMONE and RAGGI, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York, Peck, Chief Magistrate Judge, entered on December 2, 2005, against corporate trustee and controlling person in action to recover amounts due on unpaid invoices, attorneys' fees and interest under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a et seq.

Affirmed.

PAUL T. GENTILE, Gentile & Dickler, New York, NY, for Defendants-Appellants.

JEFFREY M. CHEBOT, Whiteman, Bankes & Chebot, LLC, Philadelphia, PA,
for Appellee Philadelphia Produce Credit Bureau, submitting on behalf of the Plaintiffs-Intervenors-Plaintiffs-Appellees.

Of Counsel:

Louis W. Diess, III, McCarron & Diess, Washington, D.C.,
for Top Banana, LLC, Coosemans Specialties, Inc., Katzman Berry Corp., Katzman Produce, Inc., Robert Masha Sales, Inc. and Supreme Cuts, LLC.

Leonard Kreinces, Kreinces & Rosenberg, Westbury, NY,
for AFL Fresh & Frozen, Inc., E. Armata, Inc., B.T. Produce Co., Inc., D'Arrigo Bros. Co. of New York, Inc., Fierman Produce Exchange, Inc., Fruitco Corp., Hunts Point Tropical, Inc., J&J Produce, Nathel & Nathel, Inc., Morris Okun, Inc., Mike Siegel, Inc., Square Produce Co., Inc., Kleiman & Hochberg, Inc., Paul Steinberg Associates, Inc. and Redi Fresh Produce, Inc.

MESKILL, Circuit Judge:

This appeal examines the extent of personal liability of a Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499e(c), trustee controlling person for entering into a factoring agreement resulting in a loss of trust assets for the trust beneficiaries and whether attorneys' fees are appropriate.[1]

Defendants Dom's Wholesale & Retail Center, Inc. (Dom's) and Alan J. Gargiulo, Sr. (Gargiulo), the President, sole

---

[1] A factoring agreement allows a business to "convert[] receivables into cash by selling them at a discount" to a factoring company, thereby providing the business with immediate liquidity. E. Armata, Inc. v. Korea Commercial Bank of N.Y., 367 F.3d 123, 133 (2d Cir. 2004) (alteration in original) (internal quotation marks omitted).

-3-

shareholder and sole director of Dom's, appeal from a judgment of the United States District Court for the Southern District of New York, Peck, <u>Chief</u> <u>Magistrate</u> <u>Judge</u>, awarding $1,704,680.75 in principal, interest and attorneys' fees to plaintiffs and intervenor plaintiffs (collectively "plaintiffs" or "PACA trust beneficiaries"), who are unpaid sellers and suppliers of fresh produce with claims against defendants under the statutory trust provisions of PACA. Defendants assert that the district court erred when it held Gargiulo personally liable for Dom's PACA-related debts and awarded attorneys' fees to plaintiffs. We affirm.

BACKGROUND

Plaintiffs filed suit against Dom's and Gargiulo in the Southern District of New York to enforce PACA's statutory trust provisions requiring produce buyers to hold perishable agricultural commodities, and receivables and proceeds from the sale of those commodities, in trust for the benefit of unpaid sellers until full payment has been made. 7 U.S.C. § 499e(c)(2). Plaintiffs sought to recover damages from both Dom's and Gargiulo for the principal amount due on unpaid invoices plus pre-judgment interest and attorneys' fees.

Platinum Funding Corporation (Platinum) subsequently intervened in plaintiffs' action, claiming that Dom's owes it over one million dollars pursuant to the factoring agreement

-4-

between them.  Dom's and Gargiulo deny Platinum's allegations and assert that Platinum owes Dom's $1,773,031 for breaching the factoring agreement.  In addition, defendants contend that $4,925,659 in unidentified accounts receivable were improperly "written off" by Platinum.  The district court severed these disputed matters from plaintiffs' PACA claims.  The disputed claims are pending.

Plaintiffs' motion for summary judgment was referred to Chief Magistrate Judge Peck, who recommended granting summary judgment to plaintiffs against both Dom's and Gargiulo for the principal amount in unpaid invoices plus interest and attorneys' fees.  The magistrate judge concluded that (1) as Dom's sole shareholder, officer and director, Gargiulo should be held personally liable for dissipating the PACA trust assets, (2) exhaustion of Dom's assets (if any), that were tied up in litigation with Platinum, was not required prior to holding Gargiulo personally liable, and (3) plaintiffs were entitled to an award of attorneys' fees and interest based on language contained in their invoices.  The district court adopted the magistrate judge's report and recommendation and granted summary judgment for plaintiffs.  On the consent of the parties, the magistrate judge awarded plaintiffs $1,704,680.75 in principal, interest and attorneys' fees in an order and final judgment pursuant to Fed.R.Civ.P. 54(b) certifying that there was no just

reason for delaying entry of final judgment against defendants.

On appeal, defendants concede that Dom's is liable for the principal amount and interest due on unpaid invoices, but challenge the district court's determination that Gargiulo is personally liable for Dom's PACA-related debts. Defendants also challenge the district court's award of attorneys' fees.

DISCUSSION

Federal jurisdiction is based on the action being brought pursuant to PACA, a federal statute. See 7 U.S.C. § 499e(c)(5). We have appellate jurisdiction from the final judgment entered after the Fed.R.Civ.P. 54(b) certification.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Greenidge v. Allstate Ins. Co., 446 F.3d 356, 360-61 (2d Cir. 2006). Summary judgment is proper only if "there is no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because the relevant facts on this appeal are undisputed , we review only the district court's conclusions of law.

A. PACA

We recently reviewed the history of PACA and its trust provisions in "R" Best Produce v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 241-42 (2d Cir. 2006); see also Am. Banana Co. v.

-6-

Republic Nat'l Bank of N.Y., 362 F.3d 33, 36-38 (2d Cir. 2004). Congress enacted PACA in 1930 to regulate the interstate sale and marketing of perishable agricultural commodities. See Am. Banana at 36. The statute provides growers and sellers of agricultural produce with "a self-help tool enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." D.M. Rothman & Co. v. Korea Commercial Bank of N.Y., 411 F.3d 90, 93 (2d Cir. 2005) (alterations and internal quotation marks omitted). Under the relevant provision, perishable commodities or proceeds from the sale of those commodities are held in trust by the buyer for the benefit of the unpaid seller until full payment is made:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker . . . and any receivables or proceeds from the sale of such commodities . . . shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). As a PACA trustee, a produce buyer is charged with a duty "to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment." D.M. Rothman, 411 F.3d at 94 (internal quotation marks omitted). PACA affords produce sellers "a highly unusual trust beneficiary status that permit[s]

-7-

them, in the case of defaults, to trump the buyers' other creditors, including secured ones." Am. Banana, 362 F.3d at 38.

B. Personal Liability Under PACA

An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty. See Weis-Buy Servs. v. Paglia, 411 F.3d 415, 420-21 (3d Cir. 2005); Patterson Frozen Foods v. Crown Foods Int'l, 307 F.3d 666, 669 (7th Cir. 2002); Golman-Hayden Co. v. Fresh Source Produce, 217 F.3d 348, 351 (5th Cir. 2000); Hiller Cranberry Prods. v. Koplovsky, 165 F.3d 1, 8-9 (1st Cir. 1999); Sunkist Growers v. Fisher, 104 F.3d 280, 282-83 (9th Cir. 1997); accord Bronia, Inc. v. Ho, 873 F.Supp. 854, 860-61 (S.D.N.Y. 1995); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346, 348-50 (S.D.N.Y. 1993). Gargiulo concedes that as Dom's President, sole shareholder and sole director, he was in a position of control over the PACA trust assets and that, as such, he can be held personally liable for any breaching of Dom's fiduciary duties. However, Gargiulo argues that he is not personally liable at this time because (1) he did not "dissipate" the PACA trust assets, and (2) plaintiffs have not exhausted Dom's corporate assets. We reject both arguments.

I. Dissipation of Trust Assets

PACA trustees "are required to maintain trust assets in

a manner that such assets are <u>freely</u> <u>available</u> to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1) (emphasis added). PACA regulations provide that "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful." <u>Id</u>. "Dissipation" is defined as "any act or failure to act which <u>could</u> result in the diversion of trust assets or which <u>could</u> prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." <u>Id</u>. § 46.46(a)(2) (emphasis added). Thus, to determine whether a PACA trustee's actions or omissions constitute a breach of fiduciary duty, we examine whether the trustee "in any way encumbered the funds or rendered them less freely available to PACA creditors." <u>D.M. Rothman</u>, 411 F.3d at 99 (alterations and internal quotation marks omitted).

Defendants contend that they did not dissipate PACA trust assets because Dom's factoring agreement with Platinum was commercially reasonable and any loss of assets was due solely to Platinum's breach of the agreement. We have held that a PACA trustee does not commit a <u>per se</u> breach of fiduciary duty when trust funds are used to conduct a commercial transaction with a non-PACA party. <u>E. Armata, Inc.</u> v. <u>Korea Commercial Bank of N.Y.</u>, 367 F.3d 123, 133 (2d Cir. 2004) (citation omitted).

Armata was a PACA suit against a third-party bank that charged fees for maintaining a checking account for the PACA trustee produce buyer. Id. at 126-27. The PACA trustee was not a defendant in that suit. Id. at 127. The Armata Court was only concerned with the liability of the third-party bank. Id. We determined that, in order to hold a third-party transferee in breach of trust for receipt of PACA funds there first must be a determination that the transfer of funds itself to the bank was in breach of trust. Id. at 128-29. It was in that setting that we held that a PACA trustee's payment of "commercially reasonable" interest and fees in support of its duty to maintain trust assets as "freely available" to repay its PACA creditors does not constitute a breach of trust under PACA. Id. at 134. We noted that there was nothing unusual about having funds available for PACA creditors without some relationship with a bank. Id. We remanded in Armata for the district court to determine in its analysis of the facts the commercial reasonableness of the agreement between the PACA trustee and the bank. Id. We declined to hold that no breach of a PACA trust can occur with respect to funds that are eventually paid to PACA creditors. Id. at 131.

We have never held that a PACA trustee can escape all liability for entering into a transaction that results in a large loss of PACA assets merely by showing that the transaction was

-10-

commercially reasonable on its face.  Nothing in E. Armata suggests that, simply by entering into a commercially reasonable transaction, a PACA trustee necessarily avoids breaching its fiduciary duty.  Instead, whether a transaction is commercially reasonable is simply one factor that may be relevant in determining whether a PACA trustee has met its ultimate burden of proving that trust assets remained freely available to plaintiffs.  We hold that regardless of whether the factoring agreement in this case was commercially reasonable on its face, defendants are, as a matter of law, liable to plaintiffs because the factoring agreement here, unlike the banking agreement in Armata, was with a party having arguable claims of more than one million dollars against the PACA trustee.  Thus, there can be no factual dispute that the factoring agreement jeopardized the trust funds and made them unavailable for timely payment to plaintiffs.  See Bronia, 873 F.Supp. at 861 ("Relinquishing control of the commodities without securing payment is dissipation of the trust assets."  (internal quotation marks omitted)).  Unlike Armata, where summary judgment was improper because the commercial reasonableness of the agreement with the bank had not been determined, 367 F.3d at 134, an examination of all the pleadings in our case makes clear that the district court's determination that the agreement with Platinum jeopardized the PACA trust assets was correct.  There being no

material factual issue in dispute, summary judgment was proper.

   II. Exhaustion of Corporate Assets

      Gargiulo, as PACA trustee, failed to preserve the trust assets, thus rendering him personally liable to plaintiffs. See Morris Okun, 814 F.Supp. at 348 (noting that PACA imposes liability on a trustee "who uses the trust assets for any purpose other than repayment of the supplier," including the use of trust assets "for legitimate business expenditures, such as the payment of rent, payroll, or utilities" (emphasis added)). However, Gargiulo argues that the district court prematurely held him personally liable because Dom's assets have not been exhausted. According to Gargiulo, Dom's assets include more than one million dollars that Platinum owes Dom's under the factoring agreement and millions of dollars in uncollected accounts receivable.

      Gargiulo cites cases from other circuits holding that under PACA the corporate trustee is primarily liable and that "others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." Golman-Hayden, 217 F.3d at 351; see also Sunkist Growers, 104 F.3d at 283. Gargiulo argues that these cases require PACA trust beneficiaries to await the results of Dom's collateral litigation and collection efforts before they can hold him personally liable. We disagree. To hold Gargiulo, the person in control of the trust assets, liable, plaintiffs need only show that "the

-12-

assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA liability." Golman-Hayden, 217 F.3d at 351. When PACA trust assets are tied up in litigation, or in the form of uncollected accounts receivable, they are insufficient to satisfy the PACA liability because they are not "freely available" for "prompt payment" to trust beneficiaries as the PACA regulations require. 7 C.F.R. § 46.46(d)(1), (e). Accordingly, we agree with the district court that plaintiffs need not wait for the conclusion of Dom's litigation or collection efforts before seeking recovery directly from Gargiulo.

III. <u>Attorneys' Fees</u>

Defendants' final argument concerns the district court's award of plaintiffs' attorneys' fees. Defendants do not appeal the district court's award of interest on the principal. The district court held that the invoices plaintiffs sent to defendants providing for the recovery of attorneys' fees in the event of non-payment were enforceable against defendants. On appeal, defendants argue that the attorneys' fees provisions in the invoices are unenforceable because the parties never discussed or agreed to them. Moreover, defendants argue that for Gargiulo to be held personally liable for plaintiffs' attorneys' fees they must be included as part of the PACA trust.

As the district court properly noted, "additional terms

are to be construed as proposals for addition to the contract." N.Y. U.C.C. § 2-207(2). Defendants do not dispute that New York law is controlling. When the parties are two merchants, the additional terms become part of the contract unless the party opposing those terms can establish one of three exceptions: "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." Id. The only exception at issue in this case is whether the attorneys' fee provision in plaintiffs' invoices "materially alter[ed]" the terms of their contracts with Dom's. As the party opposing the inclusion of additional terms, Dom's bears the burden of proving that the attorneys' fees provision in plaintiffs' invoices was a material alteration. See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 223 (2d Cir. 2000).

Under New York law, a "material alteration is one that would 'result in surprise or hardship if incorporated without the express awareness by the other party.'" Id. at 224 (quoting N.Y. U.C.C. § 2-207 cmt. 4).[2] We have noted that surprise includes

---

[2] We have not yet decided whether hardship alone constitutes an independent basis for finding that an additional term materially alters a contract. See, e.g., Aceros Prefabricados, S.A. v. TradeArbed, 282 F.3d 92, 101 (2d Cir. 2002). We need not decide that issue here because defendants have failed to argue that they have suffered hardship. See Bayway Ref., 215 F.3d at 226.

-14-

"both the subjective element of what a party actually knew and the objective element of what a party should have known." Id. "To carry the burden of showing surprise, a party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term." Id. As the district court concluded, defendants failed to offer any evidence to demonstrate either objective or subjective surprise over the attorneys' fee provision in plaintiffs' invoices.

Finally, the district court adopted the magistrate judge's report and recommendation finding that defendants conceded that attorneys' fees can be included in the PACA trust. Defendants now seek to withdraw that concession, asserting in their reply brief that Gargiulo cannot be held personally liable for plaintiffs' attorneys' fees because the fees in this case are not part of the PACA trust. Defendants have waived this argument because (1) they failed to object to the magistrate judge's purported error that they conceded the issue, see Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) (noting that "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point"), and (2) defendants raised this argument for the first time in their reply brief, see F.T.C. v. Verity Int'l, Ltd., 443 F.3d 48, 65 (2d Cir. 2006) ("Because the defendants-appellants did not

contest the district court's . . . determination until their reply brief, and then only cursorily, we deem it waived on appeal.").

Putting aside the waiver issue, we agree with our sister circuits that where the parties' contracts include a right to attorneys' fees, they can be awarded as "sums owing in connection with" perishable commodities transactions under PACA. 7 U.S.C. § 499e(c)(2).  See Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir. 2004); Middle Mountain Land & Produce v. Sound Commodities, 307 F.3d 1220, 1222-25 (9th Cir. 2002); see also Movsovitz & Sons of Fla. v. Axel Gonzalez, Inc., 367 F.Supp.2d 207, 215 (D.P.R. 2005); JC Produce v. Paragon Steakhouse Rests., 70 F.Supp.2d 1119, 1123 (E.D. Cal. 1999). Accordingly, because plaintiffs' invoices created an enforceable contract providing for attorneys' fees, Gargiulo is personally liable to plaintiffs for those fees as "sums owing in connection with" perishable commodities transactions under PACA.

We agree with the district court that plaintiffs' invoices providing for attorneys' fees created an enforceable contract entitling plaintiffs to recover those fees from defendants as "sums owing in connection" with perishable commodities transactions under PACA.  We also agree with the district court that Gargiulo is personally liable to plaintiffs at this time because Gargiulo was in a position of control over

-16-

the PACA trust assets and dissipated those assets, and sufficient corporate assets of Dom's were not "freely available" to plaintiffs.

Accordingly, the judgment of the district court entered on December 2, 2005, awarding $1,704,680.75 in principal, interest and attorneys' fees to plaintiffs under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a et seq., is affirmed.