**MIDDLE MOUNTAIN LAND AND PRODUCE INC; Pleasant Valley Potato Inc, Plaintiffs,**

v.

**SOUND COMMODITIES INC; Robert J. Brack, Defendants–Appellees,**

v.

**J.R. Simplot Company, Plaintiff–Intervenor–Appellant,**

v.

**Grant Courtney, Receiver–Appellee.**

No. 01–35471.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 13, 2002.*

Filed Oct. 17, 2002.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Michael J. Keaton and David M. Bagdade, Keaton & Associates, Glen Ellyn, IL; Ronald J. Trompeter and David C. Tingstad, Beresford, Booth, Demaray, & Trompeter, Seattle, WA, for the plaintiff-intervenor-appellant.

Before HILL,** GOULD and BERZON, Circuit Judges.

## OPINION

GOULD, Circuit Judge.

Appellant J.R. Simplot Company ("Simplot") appeals the district court's denial of its interest and attorneys' fees claims against Sound Commodities ("Sound"). We consider whether the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(2), as amended (2000 & Supp.2002), supports a contractual right to attorneys' fees and interest as part of a PACA trust claim.

## I

This is a PACA action for proceeds from the sale of agricultural products held in trust by Sound.[1] After the bankruptcy

---

** The Honorable James C. Hill, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

1. 7 U.S.C. § 499e(c)(2) provides: "Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions ... and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until *full payment of the sums owing in connection with such transactions* has been received by such unpaid suppliers, sellers or agents ...." (emphasis added).

and liquidation of Sound, Simplot, an agricultural supplier, filed a PACA proof of claim in the Western District of Washington for amounts due on unpaid invoices, including outstanding attorneys' fees and interest. Simplot based its entitlement to attorneys' fees and interest on language included in each of the invoices that Simplot sent to Sound.[2]

Because the assets of the statutory PACA trust were insufficient to cover all PACA claimants, the court-appointed receiver recommended a *pro rata* distribution of the funds to all PACA claimants. Additionally, the receiver objected to the portion of Simplot's claim for attorneys' fees and prejudgment interest and noted that it would be inequitable to grant Simplot attorneys' fees and interest and thereby reduce the awards of other PACA claimants. The district court agreed, concluded that it had broad authority to grant or deny attorneys' fees and interest to a PACA claimant under 7 U.S.C. § 499e(c)(2), and denied Simplot's claim for attorneys' fees and interest. Simplot appeals.

## II

■ We address whether, if valid,[3] a contractual claim by Simplot for attorneys' fees and interest is within the scope of a PACA trust claim. This issue, one of first impression in our circuit, hinges on the statutory interpretation of the language "full payment of the sums owing *in connection with* perishable agricultural commodities transactions" within 7 U.S.C. § 499e(c)(2) (emphasis added).[4]

■ We begin by looking at the plain meaning of the statute. *Alaska Dep't of Envtl. Conservation v. U.S. E.P.A.,* 298 F.3d 814, 818 (9th Cir.2002). "Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted). First, Simplot argues that the words *"in connection with"* include contractual rights to attorneys' fees and interest because Congress could have narrowly defined the scope of a PACA claim but instead chose to draft the statute broadly to include all sums owing *"in connection with"* the perishable agricultural commodities transaction. We find this argument persuasive. The plain meaning of the PACA statute's words *"in connection with"* encompasses not only the price of the perishable agricultural commodities but also additional related expenses, including contractual rights to attorneys'

---

2. Simplot included the following language within each invoice: "In the event collection action becomes necessary Buyer agrees to pay all costs of collection, including attorney's fees" and "amount past due will be subject to a finance charge of 1.5% per month (18% annual rate) until paid in full."

3. We do not decide the validity of Simplot's contractual claims since the district court has not addressed the issue.

4. The district and bankruptcy courts are split on the issue of whether this language supports a PACA trust claim for contractual rights to attorneys' fees and interest. *See JC Produce Inc. v. Paragon Steakhouse Restaurants,* 70 F.Supp.2d 1119, 1123 (E.D.Cal. 1999) (basing decision on plain language of "sums owing in connection with"); *E. Armata Inc. v. Platinum Funding Corp.* 887 F.Supp. 590, 595 (S.D.N.Y.1995) (same); *Morris Okun, Inc. v. Zimmerman, Inc.* 814 F.Supp. 346, 351 (S.D.N.Y.1993) (same). For cases excluding such costs, *see Crown Foodservice Group, Inc. v. Hughes* 1999 WL 33117269, *14 (S.D.Ohio July 12, 1999) (holding that plaintiffs are "normal judgment creditors" not "trust beneficiaries" with respect to contractual fees); *In re Richmond Produce Co., Inc.* 112 B.R. 364, 376 (Bankr.N.D.Cal.1990) (reasoning that awarding fees would be inequitable).

fees and interest, in a PACA claim. We must give the statutory language its ordinary meaning, and "[w]here Congress has, as here, intentionally and unambiguously drafted a particularly broad definition, it is not our function to undermine that effort." *Commodity Futures Trading Comm'n v. Frankwell Bullion Ltd.*, 99 F.3d 299, 303 (9th Cir.1996).

Congress wrote the statute broadly to include not only the value of commodities sold but also expenses in connection with the sale of perishable agricultural commodities when it drafted the statute. It did not limit the claim to perishable agricultural commodities alone. As with many other commercial sellers, those who sell perishable agricultural commodities may include contractual provisions for attorneys' fees and interest to account for losses that arise from delay in payment under a contractual credit arrangement. The ability to recover such losses may affect a supplier's competitive pricing. Where a PACA trust may not have sufficient funds to compensate all PACA claimants fully for their claims, the plain language of the statute does not exclude recovery of contractual rights to attorneys' fees and interest that are due *in connection with* the transaction that is the subject of their PACA trust claim. A fair reading of the statute brings contractually due attorneys' fees and interest within the scope of the statute's protection of "full payment owing in connection with the [perishable agricultural commodities] transaction." 7 U.S.C. § 499e(c)(2).

We next consider the legislative history of the statute. There is a strong presumption that the plain language of the statute expresses congressional intent, "rebutted only in rare and exceptional circumstances, when a contrary legislative intent is clearly expressed." *Ardestani v. I.N.S.*, 502 U.S. 129, 135 136, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (internal quotations and citations omitted); *see also United States v. Ron Pair Enters., Inc.* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Simplot is thus entitled to attorneys' fees and interest as a matter of contract as part of its PACA claim unless this is one of those rare and exceptional circumstances where literal interpretation of the statute would lead to a result "demonstrably at odds with the intentions of the drafters." *Demarest v. Manspeaker*, 498 U.S. 184, 190–191, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. at 571, 102 S.Ct. 3245).

To assess that possibility, we must evaluate the legislative history of PACA. PACA is a federally created statutory trust intended to promote efficiency and fairness in the perishable agricultural commodities industry. PACA was enacted in 1930 to suppress unfair and fraudulent business practices in the marketing of fresh and frozen fruits and vegetables. Perishable Agricultural Commodities Act of 1930, Pub.L. No. 98–273, § 1, 98 Stat. 165 (1930). Unfortunately, PACA as originally drafted was unable to provide complete protection to sellers. Agricultural buyers could purchase commodities on credit and then encumber the purchased assets with "hidden security agreements." 49 F.R. §§ 45735, 45737.[5] If the buyer then declared bankruptcy, the seller would have "no meaningful possibility" of receiving its contractual right to payment. *Id.* In re-

---

5. "In the early 1980's, Congress determined that the increase in non-payment and delinquent payment by produce dealers threatened the financial stability of produce growers. Congress was particularly troubled by the practice by which produce dealers granted their lenders security interests in the produce on which they had accepted delivery even though the dealers had not yet paid for these commodities." *Frio Ice, S.A. v. Sunfruit, Inc.* 918 F.2d 154, 156 (11th Cir.1990).

sponse to this concern, Congress in 1984 broadened the scope of PACA to protect unpaid perishable agricultural commodities suppliers and sellers from business failures and reorganizations of buyers by enacting 7 U.S.C. § 499e. *See* also H.R.Rep. No. 98–543 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405. The amendment impresses a trust on the perishable agricultural commodities received by the purchaser, all inventories of food or other products derived therefrom, and receivables or proceeds from the sale of such commodities and products. 7 U.S.C. § 499e. The trust automatically arises in favor of a perishable agricultural commodities seller upon delivery of perishable agricultural commodities and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing in connection with the transaction have been received. 7 U.S.C. § 499e(c)(2); *see also In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir.1991). Thus, the enactment of the PACA amendment elevated the claims of unpaid perishable agricultural commodities suppliers over all other creditors of the bankrupt estate with regard to funds in the PACA trust.

Here, it cannot be contended seriously that interpreting PACA claims to include contractual rights to attorneys' fees and interest under the *"in connection with"* language of the statute is contrary to the statute's purpose, absurd, or "demonstrably at odds with the intentions of the drafters." There is no evidence that Congress intended to exclude contractual rights to attorneys' fees and interest as outside the scope of a PACA claim. Rather, a congressional committee stated that PACA was intended "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until *full payment* of sums due have been received by them." *See* H.R.Rep. No. 98–543 (1983) *reprinted in* 1984 U.S.C.C.A.N. 405. The House Agriculture Committee

Report stated that it did not contemplate that PACA would affect "the ability of the [seller] . . . to set contract terms." *Id.* It is unlikely that Congress, in enacting a statute to provide better insolvency remedies to perishable agricultural commodities sellers, wanted selectively to exclude legitimate portions of a covered contract from the scope of a PACA claim.

The inequities of including contractual rights to attorneys' fees and interest in a PACA claim is minimal since a PACA claimant can include terms in its contracts with a buyer that allow for collection of expenses arising from a perishable agricultural commodities transaction. On the other hand, it is inequitable to prevent a PACA claimant from recovering the full amount of its claim, including collection expenses, when trust funds are sufficient to pay a claim that includes contractual rights to attorneys' fees and interest.

It appears that the district court may have been influenced by a concern expressed by the receiver that allowing Simplot to recover attorneys' fees and interest, when other agricultural suppliers did not, would create a disproportionate remedy to Simplot, giving it more for its PACA claim than others received for theirs. But this misses the point that PACA protects all that is due and owing in connection with the perishable agricultural commodity transaction. If one particular supplier, here Simplot, gained a contractual right greater than that negotiated by others, then it is not unfair for such a supplier to gain the benefit of its superior foresight or industry. We express no opinion whether Simplot's asserted contractual claim is valid, an issue not decided by the district court. But if a contractual right arose from the exchange of contractual communications and Simplot's invoices, then Simplot has a right under PACA to enforce

the full scope of its perishable agricultural commodities contract.

## III

If it were settled that the asserted contract right existed, our analysis would stop here, and it would be unnecessary to assess other issues regarding attorneys' fees and interest that were treated by the district court. But it remains for the district court to assess in further proceedings if the invoices and related communications created a contractual right to attorneys' fees and interest. Although Simplot primarily argued for attorneys' fees and interest based on its asserted contractual right to these collection expenses, the district court went on to consider whether it should award attorneys' fees and interest to Simplot or to any other PACA claimants based on its discretionary power to do so. Because these non-contractual issues will remain relevant for Appellant Simplot if no enforceable contract for attorneys' fees and interest was created, an issue we do not reach, we address the non-contractual issues. Absent contractual right, the analysis of attorneys' fees and prejudgment interest in the context of a PACA claim differs.

First, turning to attorneys' fees, the district court has limited authority to grant attorneys' fees to PACA claimants. Unlike the British legal system rule, in which the winner automatically gets attorneys' fees, the rule in American courts, commonly known as the American Rule, looks with disdain upon awarding attorneys' fees unless an independent basis exists for the award. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (noting that exceptions to the "American Rule" that prevailing party is not entitled to attorneys' fees include (1) statutory basis, (2) enforceable contract, (3) willful violation of court order, (4) bad faith action, and (5) litigation creating common fund for

the benefit of others). Under PACA, we have held that a court should award attorneys' fees to a PACA claimant whose litigation efforts "are directly responsible for the availability of the funds from the statutorily created trust." *In re Milton Poulos*, 947 F.2d at 1353 (parties deserved fee award because litigation efforts caused bankruptcy court to "declare[ ] the trust valid and enforceable."). In such cases, the "common fund" exception of *Alyeska* entitles the litigant to an attorneys' fees award out of the trust assets. Nonetheless, if the litigant is not responsible for the availability of the trust funds, the district court cannot award attorneys' fees to PACA claimants, unless the PACA claimant has another independent legal basis for attorneys' fees under an *Alyeska* exception. *Alyeska*, 421 U.S. at 259, 95 S.Ct. 1612; *see, e.g., Golman–Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 352–353 (5th Cir.2000) (holding that where a PACA claimant did not create a common trust, the attorney fee award was inappropriate). Simplot did not create a "common fund" here, and that ground is not available for an award of attorneys' fees. Nor is there an express statutory basis for attorneys' fees, under PACA, unless they are part of the sums owing "in connection with" the contract for delivery of Simplot's perishable agricultural commodities. Similarly, from the record presented, it does not appear that this case involves any willful violation of court order or any bad faith action by Sound. Accordingly, under the authority of *Alyeska*, Simplot's claim for attorneys' fees turns solely on the issue remaining for the district court on remand, whether the invoice created a contractual right to such fees.

Second, turning to the question whether prejudgment interest may be awarded under PACA absent contractual right, courts have uniformly agreed that a

district court has broad discretion to award prejudgment interest to PACA claimants under 7 U.S.C. § 499e(c)(2). *See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071–1072 (2nd Cir.1995) (district court has broad discretion to fashion prejudgment interest award to PACA claimants); *see also Morris Okun, Inc.,* 814 F.Supp. at 351 (prejudgment interest awarded on overdue accounts based on congressional intent in PACA); *see also Rodgers v. United States,* 332 U.S. 371, 373, 68 S.Ct. 5, 92 L.Ed. 3 (1947) (failure to mention interest in a federal statute permits the courts to fashion such rules in light of congressional purposes). Though we have not previously expressed a view on this subject, we agree with the district court and conclude that a district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants, and that such an award absent contract is discretionary.

**REVERSED AND REMANDED.**