[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-11119

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 1, 2004
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-02039 CV-TWT-1

COUNTRY BEST, M&M WEST COAST,
PRODUCE RIVERWOOD FARMS,

Movants-Appellees,

WEIS-BUY SERVICES, INC.,

Plaintiff-Appellant,

TOM LANGE COMPANY, INC.,
BYRON J. WOOD,
d.b.a. Harvest Moon Trading,

Plaintiffs-Appellees,

DAYOUB MARKETING, INC.,
CAPITAL PRODUCE DISTRIBUTORS, INC.,
SIX L'S PACKING CO., INC.,
DE BRUYN PRODUCE COMPANY,

Intervernors-Appellants,

versus

CHRISTOPHER RANCH, LLC,
FRESH START PRODUCE SALES, INC.,

TAYLOR FARMS TENNESSEE, INC.,
GARGIULO, INC.,
FIVE BROTHERS JALISCO PRODUCE CO., INC.,
d.b.a. Bonanza 2001, et al.,

Intervenors-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(March 1, 2004)**

Before EDMONDSON, Chief Judge, BIRCH and FARRIS[*], Circuit Judges.

PER CURIAM:

We must decide whether sellers who are beneficiaries of a trust established under the Perishable Agricultural Commodities Act are entitled to attorney fees and costs as provided in their contracts. We hold that attorney fee and interest provisions can be enforceable as additional contract terms under the Uniform Commercial Code, and that such fees and interest can be awarded as "sums owing in connection with" perishable commodities transactions under the PACA statute.

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

We reverse the district court's ruling denying fees and costs and remand for further proceedings consistent with this opinion.

## Background

Weis-Buy Services, Inc., a produce wholesaler, filed suit against John Manning, Co., a financially-troubled produce dealer, under the Perishable Agricultural Commodities Act to recover payment for produce sold to Manning. 7 U.S.C. §§ 499a-499t. Another group of sellers, the Tom Lange Group, filed a similar claim against Manning the same day. The actions were consolidated and the district court issued a temporary restraining order to prevent Manning from dissipating any assets pending creation of a "floating" trust for the sellers' benefit. Other produce sellers sought to intervene, claiming that they too had not been paid for produce they sold to Manning. The district court consolidated the cases and established a procedure for sellers to present their PACA claims. The district court ordered plaintiffs and interveners to submit their proofs of claim to the court, appointed a trustee to oversee liquidation of Manning's assets, and ordered the establishment of a trust account for the compensation of PACA beneficiaries. The ongoing evaluation of PACA claims and apportionment of the trust involves forty-two suppliers and claims exceeding $2 million.

The claims made by Weis-Buy and eight other claimants include requests for interest on past due balances and for payment of their attorney fees accrued in pursuing collection. These requests were based on notations on invoices, which they assert created a contractual right to such an award. Manning, along with some of the other claimants, objected on the ground that attorney fees and prejudgment interest awards may not be awarded from a PACA trust.

The district court granted in part Manning's "Motion to Determine the Validity of PACA Claims," finding certain claims did not qualify for relief, and denying some claimants' requests for interest and attorney fees. The court later denied the claims for attorney fees and interest, ruling that such awards were not permitted by PACA because it would result in disproportionate distribution of the trust. The Weis-Buy group of claimants appeal, seeking to enforce their contractual rights to prejudgment interest and attorney fees.

**Discussion**

We exercise jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(a)(1). *See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507 (11th Cir. 1994).

PACA regulates the sale of perishable agricultural commodities to protect produce sellers from unscrupulous or insolvent dealers, brokers, and commission

4

merchants. "The Act requires licensing of all entities qualifying as commission merchants, dealers, and brokers in perishable agricultural commodities, and provides for various remedies that may be enforced either through a complaint filed with the Secretary of Agriculture, or through an action in any court of competent jurisdiction." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1066-67 (2d Cir. 1995).

The Act also provides that in interstate transactions involving agricultural commodities, those commodities or their proceeds "shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, *until full payment of the sums owing in connection with such transactions* has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c)(2) (emphasis added). This creates a "non-segregated floating trust," which gives produce suppliers priority over banks or other creditors who may have perfected security interests in the inventory and receivables of an insolvent produce dealer. 7 C.F.R. § 46.46; *Gargiulo, NT v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). Because PACA trusts are intended for the benefit of all unpaid suppliers, all beneficiaries to a trust share the same priority. *See Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990).

5

We have not previously addressed whether a contractual claim for attorney fees and interest is recoverable as part of a PACA trust claim. In resolving this issue, we first examine the language of PACA itself in light of that statute's purpose. The first rule in statutory construction is to determine whether the "language at issue has a plain and unambiguous meaning with regard to the particular dispute." *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002), *cert. denied*, 537 U.S. 1112 (2003) (citation omitted). We presume "that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998). "When the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000).

Had Congress intended to limit PACA claims solely to the price of the commodities, it could have inserted language reflecting that limitation in 7 U.S.C. § 499e(c)(2). Instead, it chose to allow "*full payment of the sums owing in connection with [commodities] transactions.*" This unambiguously encompasses not only the price of commodities but also additional related expenses. Such related expenses include attorney fees and interest that buyers and sellers have bargained for in their contracts. *See Middle Mountain Land & Produce, Inc. v.*

*Sound Commodities, Inc.*, 307 F.3d 1220, 1223 (9th Cir. 2002); *see also, e.g.,*

*Sherman v. Carter,* 353 U.S. 210, 77 S. Ct. 793, 1 L. Ed. 2d 776 (1957) (attorney

fees encompassed within language allowing recovery of "sums justly due" under

Miller Act).

This reading of the statute is supported by the purpose and goals of PACA.

PACA was designed to give produce sellers a meaningful opportunity to recover

full payment of the amounts due for their sales. *Middle Mountain*, 307 F.3d at

1223-24 (citing 49 F.R. § § 45735, 45737). As the Ninth Circuit recently stated,

"it cannot be contended seriously that interpreting PACA claims to include

contract right to attorneys' fees and interest under the '*in connection with'*

language of the statute is contrary to the statute's purpose, absurd, or

'demonstrably at odds with the intentions of the drafters.'" *Id.* at 1224 (quoting

*Demarest v. Manspeaker*, 498 U.S. 184, 190-91, 111 S. Ct. 599, 112 L. Ed.2d 608

(1991)). Congress signaled that it had not contemplated PACA would impact "the

ability of the [seller] . . . to set contract terms." H.R. Rep. No. 98-543 (1983)

(*reprinted in* 1984 U.S.C.C.A.N. 405); *accord Middle Mountain*, 307 F.3d at

1224. This indicates that sellers and buyers remain free to negotiate and enforce

contract terms and to enforce those terms within the context of the trust

established by PACA. Such is the reasonable and equitable result. In a free

market, the price of goods is influenced by a variety of factors, including credit risks, litigation costs, late fees, and other incidents of the collection process. Commodity sellers likely offer lower prices if they know that the financial burden of their collection efforts will be lightened by the recovery of attorney fees and prejudgment interest.

Because we determine that prejudgment interest and attorney fees are "sums owing in connection with" perishable commodities transactions, we reverse the district court's ruling denying all attorney fee requests as barred by the PACA statute. And we remand for further proceedings consistent with this opinion. If the district court finds and concludes that rights to attorney fees and interest exist under applicable contract principles, they can be awarded in the same way as other "sums owing in connection with" the transactions.

Each side will bear its own cost of this appeal.

REVERSED AND REMANDED.