# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2279

_____

Wescott Agri-Products, Inc.,     *
                                       *

          Appellant,           *

                                        *     Appeal from the United States
    v.                             *     District Court for the
                                        *     District of Minnesota.

Sterling State Bank, Inc.,     *

                                        *

          Appellee.          *

_____

Submitted: February 16, 2012
Filed: June 28, 2012

_____

Before RILEY, Chief Judge, WOLLMAN and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

The district court[1] granted summary judgment to Wescott Agri-Products, Inc. on Wescott's claim that Sterling State Bank, Inc. (bank) violated the Perishable Agricultural Commodities Act, 1930 (PACA), 7 U.S.C. § 499a et seq., but denied Wescott's claim for attorney fees and costs. Wescott appeals, arguing the district court abused its discretion in denying attorney fees and costs without reviewing Wescott's billing records. We affirm.

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

## I.    BACKGROUND

Wescott is a PACA-licensed wholesale supplier of perishable agricultural commodities (produce).  In 2009, Wescott sold $26,048.75 of produce to Geckler Companies, Inc. (GCI).[2]

Beginning March 28, 2008, GCI received a series of loans from the bank.  GCI failed to make scheduled loan payments, and, on February 7, 2010, the bank seized GCI's assets located at GCI's place of business.  GCI ceased business operations on February 8, 2010, and Wescott never received payment for the produce it sold to GCI.

In March 2010, Wescott's attorney advised the bank of GCI's produce purchases and demanded payment from the bank, claiming the bank had seized assets subject to trust under PACA.[3]  The bank denied possessing PACA trust assets or any proceeds of such assets.

On June 10, 2010, Wescott sued GCI, the Gecklers, and the bank, asserting various claims, including violations of PACA and a conversion claim against the bank. Wescott sought attorney fees and costs as provided by the terms of its invoices with GCI.  On December 2, 2010, the district court granted Wescott's motion for entry of default against GCI and the Gecklers.  On April 22, 2011, the district court entered a consent judgment against GCI and the Gecklers in the amount of $102,931.09, including costs, attorney fees, and prejudgment interest as provided by the Westcott/GCI contracts.

---

[2]GCI was operated by Richard Geckler and Vicci L. Geckler (collectively, the Gecklers).

[3]PACA contains statutory trust provisions that provide produce sellers with superior rights as creditors.  See 7 U.S.C. § 499e.  If properly notified, a produce buyer, as a PACA trustee, must maintain sufficient PACA trust assets to pay all PACA trust claims as they come due.  Id.  Failing to do so may result in liability to the seller.  Id.

The bank and Wescott filed cross-motions for summary judgment, and the district court conducted a hearing on April 28, 2011. On May 2, 2011, the district court granted the bank summary judgment on Wescott's conversion claim, but denied summary judgment for the bank on the PACA claim. The district court granted Wescott summary judgment on its PACA claim, but denied Wescott's claim for attorney fees and costs.

The district court explained "Wescott has not attempted to justify . . . expenditures" "nearly triple that of the original claim." The district court determined "Wescott has not established that its request for fees and costs is reasonable in light of its conduct in this litigation," including its "'evasiveness' in responding to discovery." Noting the "acrimony" in the briefing and prosecution of the case, the district court described Wescott's actions as "less than exemplary" and demonstrating "excessive zeal."

On May 9, 2011, Wescott requested permission to file a motion to reconsider, which the district court denied. The district court reiterated "that, based on counsel's conduct in the litigation, attorney's fees were not warranted." The district court attributed its decision to (1) Wescott's claim for fees being almost three times the invoices at issue, and (2) "[m]ore importantly," Wescott's "counsel's behavior during the prosecution of the matter, including during discovery and during the matter before the [district court]." Wescott appeals the district court's denial of attorney fees and costs.

## II.    DISCUSSION

PACA does not explicitly provide for an award of attorney fees under the circumstances of this appeal. See 7 U.S.C. § 499e. Wescott's claim for attorney fees

is based upon contractual terms contained in Wescott's invoices to GCI.[4]  Under Minnesota law, parties to a contract are free to bargain for the remedy of attorney fees, but to be enforceable, the amount of fees allowed under the contract must be reasonable.  See State Bank of Cokato v. Ziehwein, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994).

We have not yet addressed whether a contractual claim for attorney fees is recoverable as part of a PACA trust claim, but the district court followed the line of cases holding "that where the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA."  Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 709 (2d Cir. 2007) (quoting 7 U.S.C. § 499e(c)(2) and listing cases); accord Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632-33 (11th Cir. 2004) (per curiam). We need not decide this issue because the bank does not challenge the district court's conclusion.

The only issue before us is the district court's denial of Wescott's attorney fees and costs.  Wescott contends "the [district court's] methodology for determining the reasonableness of Wescott's fees and costs in this case constituted an abuse of discretion" because the district court "refused to even look at Wescott's verified billing records before concluding that 100% of Wescott's attorneys' fees and costs of collection . . . were unreasonable."  According to Wescott, the district court did not "provide 'meaningful insight into the [district] court's thinking' so as to permit the appellate court its opportunity to review the district court's conduct and rationale," quoting Padrta v. Ledar Transp., Inc., 116 F. App'x 36, 38 (8th Cir. 2004) (unpublished per curiam) (quoting Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997)).  We disagree.

---

[4]Each invoice stated, "Buyer agrees to pay all costs of collection, including attorney's fees."

The decision to award or deny attorney fees and the amount of any award "rests within the sound discretion of the [district] court and we will not disturb [the district court's decision] absent a clear abuse of that discretion." Litton Microwave Cooking Prods., a Div. of Litton Sys., Inc. v. Leviton Mfg. Co., 15 F.3d 790, 796 (8th Cir. 1994); see also Koam Produce, Inc. v. DiMare Homestead, Inc., 329 F.3d 123, 130 (2d Cir. 2003) (reviewing an award of attorney fees under PACA under a "highly deferential" abuse-of-discretion standard (quoting Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 437 (2d Cir. 2002) (internal quotation marks omitted))). In reviewing the district court's denial, we are mindful,

> The trial court knows the case best. It knows what the lawyers have done, and how well they have done it. It knows what these efforts are worth. It knows how to balance portions of the case together to reach a just and reasonable award.

Young v. City of Little Rock, 249 F.3d 730, 737 (8th Cir. 2001).

We find no abuse of discretion in this case. The district court left little doubt about its reasons for denying Wescott's claim for attorney fees—the fees were excessive and unreasonable, and "[m]ore importantly," Wescott's unprofessional conduct in the case did not warrant an award of fees. In particular, the district court was troubled Wescott's fee request nearly tripled Wescott's original PACA claim—a claim Wescott itself described as a "very simple," "four-invoice case." The district court also decried Wescott's "less than exemplary" behavior and "excessive zeal" in litigating its claims, noting the magistrate judge warned Wescott about its "'evasiveness' in responding to discovery."

There is ample support in the record for the district court's findings of excessive fees and unprofessional conduct. At the summary-judgment hearing, the district court asked how Wescott's simple PACA trust claim grew from $35,000 to

more than $100,000. The bank advised the district court Wescott (1) delayed and evaded discovery, forcing the bank to file a motion to compel to address the deficiencies in Wescott's responses;[5] (2) misrepresented testimony and evidence; (3) produced an unprepared corporate designee under Fed. R. Civ. P. 30(b)(6), who could not testify to the six topics identified; (4) produced what the bank believed to be false invoices; and (5) drafted and submitted sham declarations contradicting previous sworn testimony.

In response, Wescott stated the fees increased because the bank prolonged discovery and Wescott had difficulty obtaining information on a timely basis because the bank seized and controlled GCI's documents. Ultimately, the district court concluded Wescott "failed to establish that it is entitled to its fees and costs" given its acrimony in briefing and prosecuting the case.

On appeal, Wescott generally does not dispute the district court's description of its unprofessional conduct, rather it challenges the district court's methodology in denying attorney fees.[6] In particular, Wescott faults the district court for considering (1) the proportionality of the fees sought to the award obtained, and (2) the "acrimony between the parties." Wescott's arguments are without merit.

---

[5]The magistrate judge overseeing discovery granted the bank's motion in part, expressing concern "with the evasiveness of Wescott's discovery responses, especially on the eve of the close of discovery," but denied the bank's request for sanctions and attorney fees.

[6]Wescott's strongest response to the district court's criticism of Wescott's litigation conduct is Wescott's assertion "the Magistrate Judge that oversaw the discovery proceedings expressly found both parties to share the blame of a fairly contentious fact discovery process and expressly denied both parties' requests for any sanctions relating thereto."

It is well within the district court's broad discretion in reviewing a request for fees to consider not only the amount of the fees, but also the party's unprofessional conduct in the case. See Jaquette v. Black Hawk Cnty., Iowa, 710 F.2d 455, 459, 461 (8th Cir. 1983) (affirming a reduction of attorney fees where the trial court "found that the hours claimed were 'excessive,' spent on issues of 'marginal merit,' and that the plaintiff's attorneys were guilty of 'misconduct' in conducting the litigation").

> Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards.

In re Rouss, 116 N.E. 782, 783 (N.Y. 1917) (Cardozo, J.).

> [A lawyer is] received into that ancient fellowship for something more than private gain. [A lawyer becomes] an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice.

People ex rel. Karlin v. Culkin, 162 N.E. 487, 489 (N.Y. 1928) (Cardozo, C.J.).

By its nature as a court of justice, the district court possesses inherent powers "to manage [its] affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991) (quoting Link v. Wabash R.R., 370 U.S. 626, 630-31 (1962)). These inherent powers include the ability to supervise and "discipline attorneys who appear before it" and discretion "to fashion an appropriate sanction for conduct which abuses the judicial process," including assessing attorney fees or dismissing the case. Id. at 43-45.

The district court's inherent power to govern the practice of lawyers appearing before it "encompasses, among other things, the authority to police lawyer conduct and to guard and to promote civility and collegiality among the members of its bar."

Sahyers v. Prugh, Holliday & Karatinos, P.L., 560 F.3d 1241, 1244 (11th Cir. 2009) (footnote omitted). In exercising these inherent powers, it is not unjust to hold a client responsible for its attorney's misconduct. See Link, 370 U.S. at 633. The client "voluntarily chose [its] attorney as [its] representative in the action, and . . . cannot now avoid the consequences of the acts or omissions of [its] freely selected agent." Id. at 633-34.

Applying these principles in Sahyers, the Eleventh Circuit affirmed the trial court's denial of the plaintiff's request for attorney fees and costs as a prevailing party under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. See Sahyers, 560 F.3d at 1244-46. Although the plaintiff received an award on her underlying claim and would normally have been entitled to attorney fees and costs under the statute, the trial court found the "reasonable fee and cost award . . . was zero," id. at 1244, because of the plaintiff and her counsel's uncivil conduct in the case, see id. at 1245. The Eleventh Circuit found no abuse of discretion in the trial court's refusal to "reward—and thereby to encourage—uncivil conduct by awarding [p]laintiff attorney's fees or costs." Id. at 1245-46.

In Litton Sys., Inc. v. AT&T Co., 700 F.2d 785, 827 (2d Cir. 1983), the Second Circuit affirmed the denial of all costs and attorney fees to which the plaintiff would have been entitled as a matter of law—an amount exceeding $10 million—based upon the trial court's finding the plaintiff's attorneys engaged in a pattern of intentionally concealing evidence. The Second Circuit concluded "the trial court acted soundly and correctly, as well as wisely, in imposing the sanction" to preserve "the integrity of the discovery process" and to prevent Fed. R. Civ. P. 37 from becoming a "paper tiger." Id. at 828. The Second Circuit had "no doubt that attorneys as officers of the court must operate on an honor system, and must be appropriately disciplined to provide both specific and general deterrence." Id. at 827 (internal citation omitted).

The same bedrock principles—civility, professionalism, integrity, efficiency, expediency, and deterrence—support the district court's judgment in this case. If our courts more often recognized and enforced these principles, maybe some of the discovery abuses and litigation excesses afflicting the court system would decline. Having thoroughly reviewed the record, we are satisfied the district court did not abuse its substantial discretion by refusing to award Wescott attorney fees and costs. We fully support and commend the district court's efforts to enforce civility, professionalism, efficiency, and integrity in those privileged to be members of the bar.

## III. CONCLUSION

We affirm.

_____