Honorable Rosemary Márquez, United States District Judge *1026 Pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Doc. 244), seeking to enjoin the foreclosure sale of the real property commonly known as 1033 E. Maricopa Freeway, Phoenix, Arizona 85034 (the "Real Property"). On December 27, 2016, the Court issued a Temporary Restraining Order ("TRO") pending resolution of the Motion for Preliminary Injunction. (Doc. 250.) On January 6, 2017, non-party James N. Hobbs ("Hobbs") submitted a response in opposition to the Motion for Preliminary Injunction. (Doc. 260.) The Court held a hearing on January 9, 2017, during which Hobbs testified and the parties submitted exhibits into evidence. (Doc. 262.) On January 17, 2017, Plaintiffs and non-party James N. Hobbs ("Hobbs") submitted supplemental materials (Docs. 271, 272.)
For the following reasons, the Court will deny the Motion for Preliminary Injunction and vacate the TRO issued on December 27, 2016.
I. PROCEDURAL HISTORY
On August 29, 2016, Plaintiff Sato & Co., LLC ("Sato") commenced the instant action against Defendants Kodiak Fresh Produce, LLC ("Kodiak Fresh"); Blair A. Hillman; Gretchen S. Hillman; H & K Southwest Development, LLC ("H & K"); Sperry Management, Inc.; Sperry Trading, LLC; BGH Management Services, LLC; Hillman Family Limited Partnership; Tolleson Steel, LLC ("Tolleson Steel"); Mi Hacienda Foods, LLC; and Salty Mango, LLC to enforce the trust provision of Section 5(c) of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"). Since that time, numerous additional Plaintiffs have intervened in the matter. Sato and the Intervenor-Plaintiffs allege that they are engaged in the business of selling wholesale quantities of perishable agricultural commodities ("Produce") in interstate commerce; that Kodiak Fresh was at all material times a Produce dealer subject to and licensed under the PACA, 7 U.S.C. § 499a, et seq. ; that the Hillmans own Kodiak Fresh; that Blair Hillman directed Kodiak Fresh's day-to-day operations during the relevant time period; that the remaining Defendants are entities affiliated with Kodiak Fresh and the Hillmans; and that Kodiak Fresh has failed to pay for Produce supplied to it by Plaintiffs.
The Court entered a Temporary Restraining Order on August 31, 2016 to prevent dissipation of PACA trust assets (Doc. 11), as amended on September 2, 2016 (Doc. 16). After a hearing held on September 2, 2016 (Doc. 15), and upon stipulation of the parties (Doc. 30), the Court converted the TRO into a Preliminary Injunction Order (Doc. 44), as amended on November 17, 2016 (Doc. 196).
As of the date of the Amended Preliminary Injunction Order, Sato and Intervenor-Plaintiffs averred that Kodiak Fresh had failed to pay them for Produce in the principal amount of $3,987,160.55. Since that date, the Court granted Grower Direct Marketing, LLC ("Grower Direct") leave to file an Intervenor Complaint. (Doc. 267.) Grower Direct avers that Kodiak Fresh has failed to pay it for Produce in the principal amount of $122,599.50. (Doc. 273.) There may exist additional *1027 claimants who have not yet moved for leave to intervene in this matter.
On November 21, 2016, Kodiak Fresh filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code under Case No. 2:16-bk-13321-BKM in the Bankruptcy Court for the District of Arizona, listing liabilities in the amount of $9,908,967.30 and assets in the amount of $1,077,388.66. (Doc. 245-1.) On the same date, the Hillmans filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code under Case No. 2:16-bk-13325-SHG in the Bankruptcy Court for the District of Arizona.
II. FACTS
H & K purchased the Real Property from Hobbs in 2009 for $1,500,000. (Doc. 260-3.) At the time of purchase, H & K paid $100,000 and Hobbs carried the balance of $1,400,000, with H & K agreeing to make monthly payments of at least $12,003.92. (Id. ) H & K's payment obligation was set forth in a promissory note (Doc. 260-2) and secured by a deed of trust (Doc. 260-1).
H & K's monthly mortgage payments were made through an account servicing agent, Canyon State Servicing Co. ("Canyon State"). Hobbs began receiving H & K's monthly payments from Canyon State beginning in 2009, with the last such payment occurring on August 30, 2016. (Doc. 260-5.)
On December 10, 2014, Tolleson Steel merged with H & K. (Doc. 245-3.) The Hillmans' bankruptcy forms list Tolleson Steel as the owner of the Real Property and estimate the value of the Real Property to be $1,600,000. (Doc. 245-5.)
Kodiak Fresh leased the Real Property-without a formal lease agreement-for use as Kodiak Fresh's operational headquarters. (Doc. 271-1 at 20:15-19.) Kodiak Fresh's bankruptcy forms reflect an unexpired lease for the Real Property with a monthly rent in the amount of $12,021.92. (Doc. 245-2.)[1]
According to the testimony of Blair Hillman at the First Meeting of Creditors held pursuant to 11 U.S.C. § 341(a) at the U.S. Bankruptcy Court in Phoenix, Arizona on December 29, 2016, Kodiak Fresh began leasing the building at the time H & K purchased the Real Property in 2009. (Doc. 271-1 at 20:20-24.) Kodiak Fresh's lease payments were used to make the mortgage payments on the property. (Id. at 20:25-21:5.) The funds used to make the payments derived at least in part from Produce sales. (Id. at 21:9-12.)
Other than Hillman's testimony at the First Meeting of Creditors, the record contains only minimal evidence indicating that Kodiak Fresh provided the funds for H & K's mortgage payments. A Note Transaction History Report from Canyon State reflects payments by H & K to Hobbs. (Doc. 260-5.) Plaintiffs submitted a document summarizing payments made to Hobbs through Canyon State, but the document does not indicate the source of the payments. (Doc. 271-2.) There is evidence that Kodiak Fresh wrote a check to H & K on August 23, 2016 in the amount of $12,021.92 (Doc. 245-6 at 8), which appears to correspond to a payment of the same amount processed by Canyon State on August 30, 2016 (Doc. 260-5 at 25). However, it appears that H & K cashed the check from Kodiak Fresh (check number 131722) and then wrote a separate check to Hobbs *1028 (check number 2028444). (Compare Doc. 245-6 at 8, with Doc. 260-5 at 25.)
On September 20, 2016, a Notice of Trustee's Sale was recorded with the Maricopa County Recorder, reflecting a foreclosure sale scheduled for December 29, 2016. (Doc. 245-4.) Hobbs testified at the January 9, 2017 hearing that he instigated the foreclosure process after being notified of an unpaid mechanical lien that was going to be put on the Real Property.
According to Hobbs, the credit bid on the Real Property was $992,893.38 as of December 28, 2016. (Doc. 260-7.) The parties appear to agree that the value of the Real Property is higher than Hobbs's credit bid. Hobbs testified at the January 9, 2017 hearing that the value of the Real Property will diminish rapidly if the property is left vacant.
III. LEGAL STANDARD
"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council , 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). A plaintiff seeking a preliminary injunction must show (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of a preliminary injunction, (3) that the balance of equities tips in its favor, and (4) that a preliminary injunction is in the public interest. Id. at 20, 129 S.Ct. 365. If elements (2) and (4) are satisfied, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction." Alliance for the Wild Rockies v. Cottrell , 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal quotation marks omitted). A preliminary injunction order binds the parties; their officers, agents, servants, employees, and attorneys; and "other persons who are in active concert or participation" with the parties or their officers, agents, servants, employees, and attorneys; so long as actual notice is received. Fed. R. Civ. P. 65(d)(2).[2]
IV. DISCUSSION
Plaintiffs argue that the Real Property is subject to the PACA trust and that injunctive relief is warranted because Plaintiffs would lose their right to realize any equity in the Real Property should a trustee's sale be allowed to occur.
A. PACA Trust Obligations
PACA, 7 U.S.C. § 499a, et seq. , is intended to promote fairness in the perishable agricultural commodities industry. Middle Mountain Land & Produce Inc. v. Sound Commodities Inc. , 307 F.3d 1220, 1223 (9th Cir. 2002). Congress enacted the trust provisions of § 499e in order "to protect unpaid perishable agricultural commodities suppliers and sellers from business failures and reorganizations of buyers." Id. at 1224. Section 499e(c) imposes a "non-segregated floating trust" on perishable agricultural commodities and their derivatives in favor of unpaid suppliers or sellers. See Boulder Fruit Express & Heger Organic Farm Sales v. Transp. Factoring, Inc. , 251 F.3d 1268, 1270-71 (9th Cir. 2001) ; Middle Mountain Land & Produce , 307 F.3d at 1224. As a result of this trust, suppliers or sellers of perishable agricultural commodities " 'maintain a right to recover against the purchasers superior to all creditors, including secured creditors.' "
*1029 Boulder Fruit Express & Heger Organic Farm Sales , 251 F.3d at 1270-71 (quoting Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc. , 67 F.3d 1063, 1067 (2d Cir. 1995) ). A PACA debtor may commingle PACA trust assets without defeating the trust. Endico Potatoes, Inc. , 67 F.3d at 1067 (citing 7 C.F.R. § 46.46(c) ). However, the PACA debtor then bears the burden of establishing which assets are not subject to the trust. See Six L's Packing Co. v West Des Moines State Bank , 967 F.2d 256, 258 (8th Cir. 1992).
A PACA debtor is obligated "to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1). Acts or omissions inconsistent with this obligation violate the PACA. Id. However, so long as a PACA debtor ensures that it has sufficient assets to make prompt payment to trust beneficiaries, the PACA debtor may use trust assets for other purposes, including disbursement to third parties. See Boulder Fruit Express & Heger Organic Farm Sales , 251 F.3d at 1271 ; E. Armata, Inc. v. Korea Commercial Bank of N.Y. , 367 F.3d 123, 133-34 (2d Cir. 2004) ; In re Bear Kodiak Produce, Inc. , 283 B.R. 577, 587 (Bankr.D.Ariz. 2002). "The burden of establishing a breach of a PACA trustee's fiduciary duty is on the party so contending." In re Bear Kodiak Produce, Inc. , 283 B.R. at 585.
Third parties who receive PACA trust assets "are not guarantors of the PACA trust." Boulder Fruit Express & Heger Farm Sales , 251 F.3d at 1272. In situations where disbursement of PACA trust assets to a third party constitutes a breach of the PACA trust, the third party is liable to unpaid trust beneficiaries only if it "had some role in causing the breach or dissipation of the trust." Id. ; see also Am. Banana Co. v. Republic Nat'l Bank of N.Y. , 362 F.3d 33, 41 (2d Cir. 2004) (to determine whether a third party is liable for PACA debts, courts determine, first, whether the trustee dissipated the trust by using trust assets to pay non-PACA creditors and, second, whether the third party is liable for receiving the funds); Consumers Produce Co. v. Volante Wholesale Produce, Inc. , 16 F.3d 1374, 1381 (3d Cir. 1994) ("third-party transferees may retain PACA trust assets without liability to trust beneficiaries if they are bona fide purchasers for value and without notice of the breach of trust"); Restatement (Third) of Trusts § 108(1) ("A third party is protected from liability in dealing with or assisting a trustee who is committing a breach of trust if the third party does so without knowledge or reason to know that the trustee is acting improperly."); Restatement (Third) of Trusts § 108(2) ("A third party who acquires an interest in trust property through a breach of trust is entitled to retain or enforce the interest to the extent the third party is protected as a bona fide purchaser.").
B. Likelihood of Success on the Merits
Plaintiffs argue that the Real Property is part of the PACA trust because Kodiak Fresh used funds impressed with the PACA trust to make lease payments to H & K/Tolleson Steel, which H & K/Tolleson Steel then used to make mortgage payments to Hobbs, using Canyon State for processing. Plaintiffs cite to case law supporting the proposition that real estate purchased by a PACA debtor using PACA trust assets becomes part of the PACA trust. (Doc. 245 at 7-8.) See, e.g. , A & J Produce Corp. v. Bronx Overall Econ. Dev. Corp. , 542 F.3d 54 (2d Cir. 2008) ; In re Kornblum & Co. , 81 F.3d 280 (2d Cir. 1996) ; Movsovitz & Sons of Fla., Inc. v. Doral Bank , 2010 WL 1978958 (D.P.R. May 17, 2010). However, in the present *1030 case, a PACA debtor did not purchase the Real Property. There is no evidence that Kodiak Fresh ever acquired an ownership interest in the Real Property, and there is no evidence that H & K or Tolleson Steel is a Produce dealer subject to the PACA.
Accordingly, the Court must determine whether Plaintiffs are likely to succeed on the merits of a theory of third-party liability for PACA debts. The threshold legal issues are (1) whether Kodiak Fresh dissipated PACA trust assets by making lease payments to H & K/Tolleson Steel, (2) whether H & K/Tolleson Steel is liable for receiving the lease payments from Kodiak Fresh, and (3) whether Hobbs is liable for receiving mortgage payments from H & K/Tolleson Steel. Plaintiffs have shown some likelihood of success on the first two issues. Kodiak Fresh made lease payments to H & K/Tolleson Steel in the ordinary course of its business, which ordinarily would not be considered a breach of the PACA trust. In re Bear Kodiak Produce, Inc. , 283 B.R. at 587 ("payments made in the ordinary course of a produce buyer's business" do not constitute a breach of a PACA trust). However, there is evidence (see, e.g. , Doc. 271-1 at 21:23-22:16) indicating that Kodiak Fresh may have violated its PACA trust obligations by making the lease payments using the proceeds of Produce sales without ensuring that it had sufficient assets to make prompt payment to PACA trust beneficiaries. See 7 C.F.R. § 46.46(d)(1). Given the overlap in ownership and management of Kodiak Fresh, H & K, and Tolleson Steel, Plaintiffs may be able to show that H & K/Tolleson Steel is liable for receiving PACA trust funds from Kodiak Fresh. See Boulder Fruit Express & Heger Farm Sales , 251 F.3d at 1272 ; Restatement (Third) of Trusts § 108. However, there is no evidence indicating that Hobbs is liable for receiving PACA trust funds. There is no evidence that Hobbs knew or had any reason to know that the mortgage payments made by H & K were derived from any PACA trust funds, nor is there any other evidence that Hobbs had any role in causing dissipation of the PACA trust. See Boulder Fruit Express & Heger Farm Sales , 251 F.3d at 1272 ; Restatement (Third) of Trusts § 108.
C. Likelihood of Irreparable Harm in the Absence of Injunctive Relief
Plaintiffs argue that they are likely to suffer irreparable harm in the absence of injunctive relief because, if the Real Property is sold for Hobbs's credit bid instead of its fair market value, Plaintiffs would lose their right to realize any equity in the Real Property. This argument is speculative. The Notice of Trustee's Sale indicates that the Real Property is to be sold at public auction to the highest bidder. (Doc. 245-4.) The parties appear to agree that the Real Property's value is higher than Hobbs's credit bid, and there is insufficient record evidence from which the Court could predict the price that the property is likely to obtain at a public auction.[3]
Even if the Real Property sells for Hobbs's credit bid, and H & K/Tolleson Steel therefore loses any equity in the property, it is still not clear that Plaintiffs would likely suffer irreparable harm in the absence of injunctive relief. See Winter , 555 U.S. at 22, 129 S.Ct. 365 (a mere "possibility" of irreparable harm is insufficient to support the issuance of a preliminary injunction). If Plaintiffs succeed in proving that H & K/Tolleson Steel is liable *1031 for Kodiak Fresh's PACA debts, Plaintiffs would retain their right to recover from H & K/Tolleson Steel after the sale of the Real Property. Although there is evidence that Kodiak Fresh is in severe financial jeopardy, Plaintiffs have not shown that H & K or Tolleson Steel is in severe financial jeopardy. To the contrary, at oral argument, counsel for Tolleson Steel represented that the entity is a going concern. Accordingly, Plaintiffs have not shown that H & K/Tolleson Steel's loss of equity in the Real Property would preclude Plaintiffs from recovering any PACA funds that H & K/Tolleson Steel may have received from Kodiak Fresh.
D. Balance of Equities
The balance of equities between Plaintiffs and Defendants weighs in favor of granting injunctive relief. However, the balance shifts when the interests of non-party Hobbs are taken into account. Hobbs did not sell the Real Property to a PACA dealer and there is no evidence that he knew or should have known that the mortgage payments he received from H & K included any PACA trust funds. Based on the record evidence, it appears that Hobbs is an entirely innocent third party, and yet his interests are likely to be harmed by the preliminary injunction sought by Plaintiffs. Accordingly, the Court finds that the balance of equities weighs against granting injunctive relief.
E. Public Interest
Although payment of PACA creditors is in the public interest, see 7 U.S.C. § 499e(c)(1), so is protecting the interests of innocent third parties. Under the facts of the present case, the Court finds that the public interest weighs against granting the injunctive relief requested by Plaintiffs.
V. Conclusion
After consideration of the Winter elements and the arguments and evidence submitted by the parties, the Court finds that Plaintiffs have not shown that they are entitled to the injunctive relief sought in their Motion for Preliminary Injunction.
....
IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction (Doc. 244) is denied , and the Temporary Restraining Order entered on December 27, 2016 (Doc. 250) is vacated .
IT IS FURTHER ORDERED that the Amended Preliminary Injunction Order entered on November 17, 2016 (Doc. 196) shall continue in full force and effect. Pursuant to that Order, to the extent that H & K or Tolleson Steel may receive any payment in relation to a sale of the Real Property, Defendants are restrained and enjoined from dissipating any such funds received.

The bankruptcy forms indicate that the monthly rent was paid to Canyon State. The bankruptcy trustee has moved to reject the unexpired lease nunc pro tunc as of November 21, 2016. (See Doc. 272-1.)

Hobbs is neither a party to this action nor an officer, agent, servant, employee, or attorney of a party. It is not clear whether Hobbs qualifies under Rule 65(d)(2) as a person who is in active concert or participation with the parties or their officers, agents, servants, employees, and attorneys. The briefs on record do not thoroughly address this issue.

Plaintiffs could ensure that the Real Property sells for its fair market value by bidding the fair market value at the trustee's sale.